STEVEN D. MEACHAM, Esq.
California Bar No. 169977    E-filing
PEEL BRIMLEY, LLP
3333 E. Serene Avenue, Suite 200
Henderson, Nevada 89074
Phone: (702) 990-7272
Fax: (702) 990-7273
Email: smeacham@peelbrimley.com

Attorneys for Plaintiff Project
Development Group, Inc.

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ♦ Fax: (702) 990-7273

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PROJECT DEVELOPMENT GROUP, INC.,
a Pennsylvania corporation,

        Plaintiff,

vs.

SONOMA COUNTY JUNIOR COLLEGE
DISTRICT, of the County of Sonoma, State
of California,

        Defendant.

CASE NO.: C 07 2987

COMPLAINT FOR DAMAGES

BY FAX

COMES NOW plaintiff Project Development Group, Inc. ("PDG"), a Pennsylvania corporation, and for its causes of action against defendant Sonoma County Junior College District (the "District"), an educational institution of the County of Sonoma, State of California, alleges as follows:

### PARTIES

    1.    Plaintiff Project Development Group, Inc. is a Pennsylvania corporation duly authorized to conduct business in California;

    2.    Defendant Sonoma County Junior College District is an educational institution of the County of Sonoma, State of California.

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ◆ Fax: (702) 990-7273

1

## JURISDICTION AND VENUE

2    3.    The court has jurisdiction over this matter under 28 USC §1332 because there is

3  diversity of citizenship and the amount in controversy exceed $75,000.00.  Venue is proper

4  with this court pursuant to Civil L.R. 3-2(d).

5

## FACTS

6  CONTRACT SCOPE OF WORK

7    4.    On or about September 25, 2006, the District entered into an asbestos abatement

8  contract with PDG to perform work relating to the remodelling of the Plover Library located on

9  the campus of Santa Rosa Junior College in Sonoma County, California.  Attached hereto as

10  Exhibit "A" is a true and correct copy of the contract.  This contract was publicly bid based

11  upon the General Conditions and Technical Specifications contained in the "Plover Asbestos

12  Abatement Project" Invitation to Bidder that specifically describes the scope of work required

13  under the contract.  Included in the bid documents is an August 14, 2006 asbestos survey

14  prepared by Ralph Curran Company upon which the bidders were entitled to rely upon to

15  determine the scope of work.  PDG relied upon the August 14, 2006 survey included with the

16  project Invitation to Bid and the contract documents to prepare its bid.

17    5.    The technical specification issued by the District states that only the following

18  material contained asbestos: Acoustical texture on the interior walls and ceiling, 9' tile and

19  mastic composing the interior floor, and linoleum and mastic in the check out area.   The

20  technical specification further provides as follows:

21       Vinyl asbestos tile, linoleum, acoustical texture, gypsum wallboard system, roof

22       flashing and transite panels are asbestos containing material known to present at the

23       worksite.  If any other materials are found, which are suspected of containing asbestos,

24       immediately notify Owner's Representative.

25  The August 14, 2006 asbestos survey contained in the project contract documents confirms that

26  asbestos existed only in the acoustical ceiling texture and did not exist in the interior plaster,

27  the gypsum, or the skim coat layer between the plaster and the acoustical texture.   The

28  District's design and bid documents do not require bidders to completely remove or demolish

the ceilings or walls within the Plover Library, or any other demolition work. Demolition of existing material was responsible of the general contractor for the remodel project, Alten Construction.

6.    The District issued addendum number one to the bid documents that includes the following provision:

> Contractor is responsible for removal of all asbestos in building, including . . . in any areas of ceiling that are currently covered where tops of walls have been terminated at the finished ceiling. This condition occurs in several areas where walls were constructed after the building was originally completed.

This addendum does not change the definition of asbestos material located in the building or the information set forth in the August 14, 2006 asbestos survey and does not increase the contract scope of work. This addendum merely clarifies the scope of work and informs the bidders that asbestos should be anticipated in the ceiling areas where the tops of walls have been terminated in addition to the general ceiling area where acoustical texture could be readily observed.

7.    On September 11, 2006, PDG submitted its bid in the amount of $127,300.00 to complete the work stated in the District's contract documents, which was only $8,700.00 less than the second bidder.

PDG's PERFORMANCE OF CONTRACT SCOPE OF WORK

8.    On September 13, 2006, the District awarded the Plover Asbestos Abatement Project contract to PDG and issued its Notice to Proceed on October 2, 2006 with a directive to begin work on October 3, 2006. PDG could not begin its contract work as directed by the District because furniture and fixtures had not been removed from the library. Because the District failed to remove its furniture and fixtures, PDG incurred additional costs to remove the District's furniture and fixtures, which also delayed PDG's start of contract work.

9.    PDG's could not begin contract work as directed by the District because, per the District's contract, work could not commence until the Owner's Representative held a pre-construction meeting, which did not occur until October 13, 2006.

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ♦ Fax: (702) 990-7273

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ◆ Fax: (702) 990-7273

10.    Because PDG was forced to complete selective demolition of existing furniture and fixtures which was not within PDG's contract scope of work, PDG incurred damages in an amount not less than $22,290.43 and its start of work under the contract was delayed seven calendar days.

11.    Despite demands for an equitable adjustment of the contract price and time to complete this additional work, the District refused to compensate PDG for the additional work and refused to extend the contract completion date.

12.    After removing the District's furniture and fixtures and after the pre-construction meeting was held, PDG timely and fully performed the work described in the contract documents; completing abatement in strict conformance with the District's contract on or before November 7, 2006.

DISCOVERY OF UNDISCLOSED, UNKNOWN ASBESTOS AFTER ACOUSTICAL TEXTURE ABATED

13.    PDG's completed work was inspected by the District's agent, NorBay Consulting, Inc. ("NorBay"). On November 8, 2006, NorBay noticed a thin film of skim coating on the surface of the plaster where the acoustical texture was removed by PDG and took samples for testing purposes. The following day, PDG wrote to the Owner's Representative requesting direction from the District regarding "additional work" the District was or may be considering.

14.    The tests performed on the NorBay samples found that the skim coat contained asbestos when the August 16, 2006 pre-construction survey states the skim coat is asbestos free. These test results also indicate that the asbestos content was substantially higher than the August 16, 2006 asbestos survey indicated was contained in the acoustical texture prior to abatement. Upon being notified of these test results, on November 13, 2006 PDG requested written authorization from the District "to move forward on the demolition of plaster ceilings as asbestos waste as a change order to the original contract. . . . Approx cost is $117,000.00." PDG also placed the District on notice that PDG would be charging the District for labor and equipment costs incurred as a result of the District's failure to take final air samples and issue final clearances for the project. The District responded that PDG did not complete its contract

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ♦ Fax: (702) 990-7273

1  work because a thin layer of asbestos containing material, which was neither identified in the

2  District's contract documents as asbestos-containing material nor identified in the August 16,

3  2006 asbestos survey, was observed on the face of the plaster.

4      15.    On November 17, 2006, the District threatened PDG with legal action under

5  California's False Claims Act because PDG submitted an estimate to complete additional work

6  on the project.

7      16.    Between November 13, 2006 and December 4, 2006, PDG and the District

8  cooperatively continued to take material samples to determine whether the skim coat in fact

9  contained asbestos.   Samples taken and tested by an independent consultant for PDG disclosed

10 that that skim coat was asbestos free.  Additional tests performed by the District continued to

11 identify asbestos levels well in excess of the levels indicated in the August 26, 2006 asbestos

12 survey. The District's test results were transmitted to PDG on December 4, 2006.

13     17.    On December 6, 2006, two days after the District disclosed the results of the

14 material samples it had tested showing asbestos levels substantially different from the August

15 26, 2006 asbestos survey, the District issued its Notice of Intent to Terminate the Contract.

16     18.    Between November 7, 2006 and December 6, 2006, PDG incurred damages in

17 an amount not less than $53,488.79 to complete work outside the scope of the original contract.

18     19.    Despite demands for an equitable adjustment of the contract price and time to

19 complete additional work between November 7, 2006 and December 6, 2006, the District

20 refused to compensate PDG for the additional work and refused to extend the contract

21 completion date.

22 DEMOLITION PERFORMED BY PDG AT THE DISTRICT'S DIRECTION

23     20.    On December 7, 2006 and under the District's threatened litigation under

24 California's False Claims Act and intent to terminate the contract, PDG informed the District

25 that it would completely remove and demolish the ceilings without regard to the presence of

26 asbestos and dispose of all material as if it contained asbestos.  PDG further stated, "PDG

27 reserves all of its contract and common law rights to claim for all direct and indirect costs,

28 expenses, and damages it incurs to investigate and abate, demo, and/or dispose of existing

Complaint for Damages - 5

1    material at the Plover Library after November 7, 2006, the date PDG completed its work in

2    accordance with the contract documents."

3        21.    Between December 11, 2006 and December 31, 2006, PDG in fact completely

4    removed and disposed of all existing ceiling material from the Plover Library, which was not

5    contemplated by the specific terms of the District's contract documents.

6        22.    PDG incurred damages in an amount not less than $122,575.95 to completely

7    remove and dispose of all existing ceiling material, which was not required or contemplated by

8    the District's contract documents.

9        23.    Despite demands for an equitable adjustment of the contract price and time to

10   complete additional work between December 11, 2006 and December 31, 2006, the District

11   refused to compensate PDG for the additional work and refused to extend the contract

12   completion date.

13   ADDITIONAL FORCE ACCOUNT WORK PERFORMED BY PDG AT THE DISTRICT'S DIRECTION

14       24.    After PDG completely removed and disposed of all ceiling material from the

15   Plover Library, the District directed PDG to perform additional asbestos abatement and

16   demolition work when the District discovered a second ceiling under the contract force account

17   provisions.  PDG completed this additional work as directed by the District in one day and

18   incurred $9,808.82 in additional costs.

19       25.    Despite demands for an equitable adjustment of the contract price and time to

20   complete this additional work, the District refused to compensate PDG for the additional work

21   and refused to extend the contract completion date.

22       26.    Once the newly discovered second ceiling was removed, the District again

23   directed PDG to perform additional work on the project and completely remove and dispose of

24   plaster surfaces above imbedded light fixtures discovered after the plaster ceilings were

25   removed.  PDG performed this demolition work as directed by the District between January 3,

26   2007 and January 21, 2007, at a cost to PDG of $134,585.29.

27   / / /

28   / / /

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ◆ Fax: (702) 990-7273

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ♦ Fax: (702) 990-7273

27.     Despite demands for an equitable adjustment of the contract price and time to complete additional work between January 3, 2007 and January 21, 2007, the District refused to compensate PDG for the additional work and refused to extend the contract completion date.

THE DISTRICT'S ASSESSMENT OF LIQUIDATED DAMAGES

28.     Despite the fact that the plans and specifications issued by the District were incomplete, inaccurate, defective, and misrepresented the asbestos abatement scope of work, which delayed and impacted PDG's work, the District assessed liquidated damages against PDG for failing to complete the work within the time allowed by the contract.

29.     Despite the fact that unknown and undisclosed asbestos was discovered after the original contract work was completed and the District directed PDG to perform work outside the original contract scope of work, which delayed and impacted PDG's completion of work, the District assessed liquidated damages against PDG for failing to complete the work within the time allowed by the contract.

30.     Despite the fact that the District interfered with and delayed PDG's ability to perform work as directed by the District, the District assessed liquidated damages against PDG for failing to complete the work within the time allowed by the contract.

31.     The District's acts and omissions solely and/or concurrently delayed PDG's completion of the contract work.

32.     The District has wrongfully assessed liquidated damages and failed to extend the contract performance period.

33.     The District's wrongful assessment of liquidated damages in the amount of $24,400.00 (61 days at $400.00 per day) constitutes a penalty and not a preset measure of uncertain damages the District would incur in the event of PDG's breach of the contract.

THE DISTRICT'S ASSESSMENT OF REMODEL CONTRACTOR CLAIM FOR DELAYED START OF WORK

34.     In addition to wrongfully and unlawfully assessing liquidated damages, the District has withheld $123,724.00 otherwise owing to PDG because Alten Construction, the remodel general contractor, filed a claims for alleged additional costs incurred when its start of work was delayed from November 1, 2006 to January 18, 2007.  The District's acts and

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ◆ Fax: (702) 990-7273

omissions, and failure to mitigate its damages, are the sole cause of Alten Construction's damages, if damages where in fact incurred.

THE DISTRICT'S REFUSAL TO PAY PDG FOR CONTRACT WORK AND ADDITIONAL WORK PERFORMED AT THE DISTRICT'S DIRECTION

35.    PDG incurred costs in an amount not less than $597,348.52 to complete the original contract scope of work and all of the additional work performed at the District's direction.

36.    Despite repeated demand for payment beginning in November 2006, the District refused to pay PDG for the original contract work or the additional work performed at the District's request and direction until May 3, 2007, when the District issued payment in the amount $55,317.28, less than ten percent (10%) of the reasonable value of the work performed by PDG.

**CAUSES OF ACTION**

BREACH OF CONTRACT

37.    The District breached its contract with PDG when it unreasonably refused to pay PDG for the work performed to complete the original scope of work and the additional work performed at the District's request and direction, unreasonably refused to extend the contract completion date, and unreasonably refused to mitigate its damages caused by the District's own acts and omissions.

38.    As a direct and proximate result of the District's breach of contract, PDG suffered damages in an amount to be proven at trial and not less than $542,031.24, plus prejudgment interest on the liquidated sum, attorney fees and costs.

BREACH OF IMPLIED WARRANTY – SUFFICIENCY OF PLANS AND SPECIFICATIONS

39.    The District breached its implied warranty to issue constructions plans and specifications sufficient for PDG to perform the asbestos abatement work required by the District.

40.    As a direct and proximate result of the District's breach of its implied warranty, PDG suffered damages in an amount to be proven at trial and not less than $542,031.24, plus prejudgment interest on the liquidated sum, attorney fees and costs.

Complaint for Damages - 8

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ♦ Fax: (702) 990-7273

1  BREACH OF GOOD FAITH AND FAIR DEALING

2      41.    The District breached its implied duty of good faith and fair dealing when it

3  refused to equitably adjust the contract price and contract time, directed PDG to perform work

4  outside the contact scope, and refused to timely and fully compensate PDG for the work

5  performed.

6      42.    As a direct and proximate result of the District's breach of its good faith and fair

7  dealing duty, PDG suffered damages in an amount to be proven at trial and not less that

8  $542,031.24, plus prejudgment interest on the liquidated sum, attorney fees and costs.

9  UNJUST ENRICHMENT AND QUANTUM MERUIT

10     43.    The District is unjustly enriched when it received the benefit of PDG's

11 performance of the original scope of work and the additional work required by the District and

12 refused to timely and fully compensate PDG for the work performed.

13     44.    The reasonable value of the work performed by PDG is not less than

14 $597,348.52.

15     45.    PDG is entitled to recover the unpaid reasonable value of the work performed

16 by PDG and the benefit received by the District in quantum meruit and in an amount to be

17 proven at trial, which is not less than $542,031.24, plus prejudgment interest on the liquidated

18 sum, attorney fees and costs.

19 PUNITIVE DAMAGES

20     46.    The District's acts and omissions constitute circumstances of aggravation or

21 outrage, such as spite or malice, and fraudulent or evil motive, and conscious and deliberate

22 willful or wanton disregard of the interests of PDG, which entitles PDG to recover punitive

23 damages against the District in an amount to be determined by the court.

24     WHEREFORE, plaintiff Project Development Group, Inc. prays for the following

25 relief:

26     1.    Judgment and award of damages against the District in an amount to be proven

27 at trial and not less than $542,031.24, plus prejudgment interest;

28     2.    Judgment and award of exemplary and punitive damages against the District;

3.     Award of PDG's attorney fees and costs incurred; and

4.     Such other and further relief as the court deems just and equitable.

DATED this 7th day of June, 2007.

PEEL BRIMLEY LLP

STEVEN D. MEACHAM, ESQ.
California Bar No. 169977
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272
Attorneys for Plaintiff Project Development
Group, Inc.

PEEL BRIMLEY LLP
3333 E. Serene Avenue, Suite 200
Henderson, NV 89074
Phone: (702) 990-7272 ◆ Fax: (702) 990-7273

Complaint for Damages - 10

# ATTACHMENT 1

## CONTRACT NO. 880457

THIS CONTRACT is made by and between the Sonoma County Junior College District, hereinafter called the District, and Project Development Group Inc., hereinafter called the Contractor.

The District and the Contractor hereby agree as follows:

1.    Description of Work

The Contractor agrees to furnish all labor, materials, equipment, plant, tools, supervision, appurtenances, and services, including transportation and utilities, required to perform and complete the Plover Asbestos Removal project.

The Contract Documents consist of the Contract, any Amendment to Contract, Technical Specifications and Drawings, Supplementary General Conditions, General Conditions, Instructions to Bidders, Notice Inviting Bids, Labor Compliance Program (if applicable), Bid Form, all addenda, completed bond and insurance forms and completed Bidder's Questionnaire.

All Contract Documents are intended to coordinate so that any work called for in one document and not mentioned in another document is to be executed as if mentioned in all documents.

2.    Compensation

As full compensation for the Contractor's complete performance of the work in this Contract, the District agrees to pay the Contractor, and the Contractor agrees to accept the sum of $127,300.00 which shall be paid to the Contractor according to the General Conditions Article on "Payments".

3.    Prevailing Wages

As required by Labor Code Section 1773.2, the District has on file in its office copies of the general prevailing rate of per diem wages for workers employed on public works as determined by the Director of Industrial Relations. This document shall be available to any interested party on request and shall be posted at the job site by the Contractor.

4.    Time for Completion

The starting date of the Contract shall be the day listed by the District in the Notice to Proceed and the Contractor shall fully complete all the work before the expiration of 30 calendar days from said starting date.

Time is of the essence in the performance of this Contract.

Liquidated damages for Contractor's failure to complete the Contract within the time fixed for completion are established in the amount of $400.00 per calendar day.

5.    Contractors' State License Board

Contractors are required by law to be licensed and regulated by the Contractors' State License Board.    Any questions concerning a contractor may be referred to the Registrar, Contractors' State License Board, P.O. Box 26000, Sacramento, California 95826.

IN WITNESS WHEREOF, the parties to these present have set their hands hereto on the day and year written below.

TIM BOSMA
Purchasing Director
District|

Date            9-25-2006

PROJECT DEVELOPMENT GROUP
Contractor

756281    11/30/2006
(Contractor License No., and Expiration Date)

By_____
        Individual Signature

GENERAL MANAGER
Title

9-19-06
Date

For_____
    Corporation or Partnership

If Corporation, Seal Below.



SANTA ROSA
JUNIOR COLLEGE

# Plover Asbesto Abatement Project

# TECHNICAL

# SPECIFICATIONS

TO: DAVE
FROM: GUY

Santa Rosa Junior College

SECTION 01013A

SUMMARY OF THE WORK – ASBESTOS ABATEMENT

PART 1 - GENERAL

1.01    RELATED DOCUMENTS

A.      Drawings, general provisions of Contract, including General and Supplementary Conditions, and other Division-1 Specification Section, apply to work of this section.

1.02    PROJECT/WORK IDENTIFICATION

A.      General: Project name is Plover Library Asbestos Abatement Project

B.      Contract Documents: Contract Documents indicate the work of the Contract and requirements and conditions that are a part of the project.  Requirements and conditions that are indicated on the Contract Documents include, but are not limited to the following:

     1.     Codes and regulations including EPA, Cal/OSHA and Fed/OSHA.

     2.     Notices and permits.

     3.     Existing site conditions and restrictions on use of the site.

     4.     Work to be performed subsequent to work under this Contract.

C.      Summary by References: Work of the Contract can be summarized by references to the Contract, General Conditions, Supplementary Conditions, Specification Sections.

        The contractor is responsible for notifying and paying the Bay Area Air Quality Management District and securing the "J" number for renovation.

D.      The contractor shall furnish all labor, services, materials, insurance (specifically covering the handling and transportation of asbestos-containing materials), and equipment which is specified, shown or reasonable implied for the removal, transport, and disposal of the following asbestos-containing materials.

Section 01013A- Summary of Work
Page- 1

Santa Rosa Junior College

Santa Rosa Junior College

# PLOVER LIBRARY

| LOCATION | ASBESTOS MATERIAL | QUANTITY Sq. ft. | REMOVAL CLASSIFICATION |
|---|---|---|---|
| Interior walls & ceiling | Acoustical texture | 36,500 | Class 1 |
| Interior floor exposed and under carpet | 9' tile and mastic | 5600 | Class 1 |
| Check out area | Linoleum and mastic | 336 | Class1 |

1.03    INSPECTION

    A.    Prior to commencement of work, inspect areas in which work will be performed. Prepare a listing of damage to surrounding properties, which could be misconstrued as damage resulting from the asbestos removal work. Photograph or videotape existing conditions as necessary to document conditions. Submit to Owner's Representative prior to starting work.

1.04    POTENTIAL ASBESTOS HAZARD

    A.    The disturbance or dislocation of asbestos-containing materials may cause asbestos fibers to be released into the building's atmosphere, thereby creating a potential health hazard to workmen and building occupants.   Apprise all workers, supervisory personnel, subcontractors and consultants who will be at the job site of the seriousness of the hazard and of proper work procedures which must be followed.

    B.    Where in the performance of the work, workers, supervisory personnel, subcontractors, or consultants may encounter, disturb, or otherwise function in the immediate vicinity of any identified asbestos-containing materials, take appropriate continuous measures as necessary to protect all building occupants from the potential hazard of exposure to airborne asbestos.  Such measures shall include the procedures and methods described herein, and compliance with regulations of applicable federal, state and local agencies.

Santa Rosa Junior College

1.05   STOP WORK

    A.    If the Owner or the Owner's Representative presents a written stop work order immediately stop all work. Do not recommence work until authorized in writing by Owner's Representative.

1.06   ASBESTOS CONTAINING MATERIALS

    A.    Vinyl asbestos tile, linoleum, acoustical texture, gypsum wallboard system, roof flashing, and transite panels are asbestos containing materials known to be present at the worksite. If any other materials are found, which are suspected of containing asbestos, immediately notify Owner's Representative.

1.07   CONTRACTOR USE OF PREMISES

    A.    General: The Contractor shall limit his use of the premises to the work indicated, so as to allow for Owner occupancy and use by the public

    B.    Use of the Site: Confine operations at the site to the areas permitted under the Contract. Portions of the site beyond areas on which work is indicated are not to be disturbed.

        1.    Keep existing driveways and entrances serving the premises clear and available to the Owner and his employees at all times. Do not use these areas for parking or storage of materials. Do not unreasonably encumber the site with materials or equipment.

    C.    Contractor's Use of the Existing Building: Maintain existing portions of the building involved in this work in a safe and weather tight condition throughout the construction period. Repair damage caused by construction operations. Take all precautions necessary to protect the building and its occupants during the construction period.

END OF SECTION

Santa Rosa Junior College

## SECTION 01043A

## PROJECT COORDINATION – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

    A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and other Division-1 Specification Sections, apply to this section.

1.02    SUMMARY

    A.    This Section specifies administrative and supervisory Requirements necessary for Project coordination including, but not necessarily limited to:

        1.    Supervisory personnel.

        2.    Notifications to other entities at job site.

        3.    Notifications to Owner's Representative.

1.03    SUPERVISORY PERSONNEL

    A.    Superintendent: Provide a full-time superintendent who is experienced in administration and supervision of asbestos abatement projects including work practices, protective measures for building and personnel, disposal procedures, etc. This person is the Contractor's Representative responsible for compliance with all applicable federal, state and local regulations, particularly those relating to asbestos containing materials.

    B.    Experience and Training: The Superintendent must have completed a course at an EPA Training Center or equivalent certificate course in asbestos abatement procedures, and have had a minimum of two (2) years on-the-job training in asbestos abatement procedures.

    C    Competent Person: The Superintendent is to be a Competent Person as required by OSHA in 29 CFR 1926.

    D.    Accreditation: The Superintendent is to be accredited as an Asbestos Abatement Supervisor in accordance with the AHERA regulation 40 CFR Part 763, Subpart E, Appendix C.

Santa Rosa Junior College

1.04    PRE-CONSTRUCTION MEETING

    A.    An initial pre-construction meeting will be convened by the Owner's Representative prior to start of any work. Meet at project site, or as otherwise directed with Superintendent, Owner, Owner's Representative, Project Administrator, and other entities concerned with the asbestos abatement work.

        1.    72 hours advance notice will be provided to all participants prior to convening Pre-Construction Conference. This is an organizational meeting, to review responsibilities and personnel assignments and to locate the containment and decontamination areas and temporary facilities including power, light, water, etc.

1.05    NOTIFICATIONS

    A.    Notify other entities at the job site of the nature of the asbestos abatement activities, location of asbestos-containing materials, requirements relative to asbestos set forth in these specifications and applicable regulations.

    B.    Notify emergency service agencies including fire, ambulance, police or other agency that may service the abatement work site in case of an emergency. Notification is to include methods of entering work area, emergency entry and exit locations, modifications to fire notification or fire fighting equipment, and other information needed by agencies providing emergency services.

    C.    Notifications of Emergency: Any individual at the job site may notify emergency service agencies if necessary without effect on this Contract or the Contract Sum.

    D.    Notification of Regulatory Agencies: Any regulatory agency such as CAL/OSHA and BAAQMD that have jurisdiction in the City of Santa Rosa.

    E.    Notification to Owner's Representative. Notify Owner's Representative of any existing building material suspected of containing asbestos. Notify Owner's Representative 24 hrs prior to anticipated completion of any abatement for air clearance scheduling. Do not remove containment prior to positive air clearance results communicated to Abatement Contractor by Owner's Representative.

END OF SECTION

Santa Rosa Junior College

## SECTION 01091A

## DEFINITIONS AND STANDARDS – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

    A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and other Division-1 Specification Sections, apply to this Section.

1.02    INDUSTRY STANDARDS

    A.    Applicability of Standards: Except where Contract Documents include more stringent requirements, applicable construction industry standards have the same force and effect as if bound or copied directly into Contract Documents. Such standards are made a part of the Contract Documents by reference.

    B.    Publication Dates: Where compliance with an industry standard is required, comply with standard in effect as of date of Contract Documents.

1.03    SUBMITTALS

    A.    Permits, Licenses and Certificates: For the Owner's records, submit copies of permits, licenses, certifications, inspection reports, releases, jurisdictional settlements, notices, receipts for fee payments, judgments, and similar documents, correspondence and records established in conjunction with compliance with standards and regulations bearing upon performance of the work.

PART 2 – PRODUCTS (Not Applicable)

PART 3 – EXECUTION (Not Applicable)

END OF SECTION

Santa Rosa Junior College

## SECTION 01092A

### CODES, REGULATIONS, AND STANDARDS – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

    A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and other Division-1 Specification Sections, apply to this section.

1.02    SUMMARY

    A.    This section sets forth governmental regulations and industry standards which are included and incorporated herein by reference and made a part of the specification. This section also sets forth those notices and permits which are known to the Owner and which either must be applied for and received, or which must be given to governmental agencies before start of work.

        1.    Requirements include adherence to work practices and procedures set forth in applicable codes, regulations and standards.

        2.    Requirements include obtaining permits, licenses, inspections, releases and similar documentation, as well as payments, statements and similar requirements associated with codes, regulations, and standards.

1.03    CODES AND REGULATIONS

    A.    General Applicability of Codes and Regulations, and Standards: Except to the extent that more explicit or more stringent requirements are written directly into the contract documents, all applicable codes, regulations, and standards have the same force and effect (and are made a part of the contract documents by reference) as if copied directly into the contract documents, or as if published copies are bound herewith.

    B.    Contractor Responsibility: The Contractor shall assume full responsibility and liability for the compliance with all applicable Federal, State, CAL/OSHA, and local regulations pertaining to work practices, hauling, disposal, and protection of workers, visitors to the site, air quality and persons occupying areas adjacent to the site. The Contractor is responsible for providing medical examinations and maintaining medical records of personnel as required by the applicable Federal, State, and local regulations. The Contractor shall hold the Owner and Owner's Representative harmless for failure to comply with any applicable work, hauling, disposal, safety, health or other regulation on the part of himself, his employees, or his subcontractors.

END OF SECTION

Santa Rosa Junior College

SECTION 01301A

SUBMITTALS – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

   A.    Drawings and general provisions of the Contract, including General and Supplementary Conditions and other division-1 Specification Section, apply to this Section.

1.02    SUMMARY

   A.    This Section specifies procedural requirements for submittals required for performance of the Work, including:
      ❑  Contractor's construction schedule.
      ❑  Pre–job submittal package.
      ❑  Post-job submittal package.

1.03    CONTRACTOR'S CONSTRUCTION SCHEDULE

   A.    Schedule: Provide proposed detailed schedule including work dates, work shift time, number of employees, dates of start and completion including dates of preparation work, removals and final inspection dates.

   B.    Schedule Updating: Revise the schedule after each meeting or activity, where revisions have been recognized or made.  Issue the updated schedule within one week.

1.04    CONTRACTORS PRE-JOB SUBMITTAL PACKAGE

   A.    Schedule: Provide pre-job submittals consisting of:
      ❑  Training certifications for all workers.
      ❑  Abatement contractor license.
      ❑  Insurance certificates.

1.05    CONTRACTOR'S POST-JOB SUBMITTAL PACKAGE

   A.    Schedule: Provide post-fob submittals consisting of:
      ❑  Entry/Exit and Daily Logs
      ❑  Employee Documentation
      ❑  Air Sampling Results
      ❑  Manometer Readings

1.06    OWNER'S REPRESENTATIVE'S ACTION

   A.    Except for submittals for record, information or similar purposes, where action and return is required or requested, the Owner's Representative will review each submittal, mark to indicate action taken, and return promptly.
   END OF SECTION

Section 01301A- Submittals
Page- 1

Santa Rosa Junior College

## SECTION 01410A

AIR MONITORING – TEST LABORATORY SERVICES – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

      A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and other Division-1 Specification Sections, apply to work of this section.

1.02    DESCRIPTION OF THE WORK

      A.    Not in Contract Sum: This section describes work being performed by the Owner. This work is not in the Contract Sum.

      B.    This section describes air monitoring carried out by the owner to verify that the building beyond the work area and the outside environment remains uncontaminated.

      C.    Air monitoring required by OSHA is work of the Contractor and is not covered in this section.

1.03    AIR MONITORING

      A.    Work Area Isolation: The purpose of the Owner's air monitoring is to detect faults in the work area isolation such as:

            1.    Contamination of the building outside of the work area with airborne asbestos fibers.

            2.    Failure of filtration or rupture in the differential pressure system, contamination of air outside the building envelop by airborne asbestos fibers.

      B.    Should any of the above occur, immediately cease asbestos abatement activities until the fault is corrected.  Do not recommence work until authorized by the Owner's Representative.

END OF SECTION

Santa Rosa Junior College

## SECTION 01701A

## PROJECT CLOSEOUT – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

    A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and other Division-1 Specification Sections, apply to this Section.

1.02    SUMMARY

    A.    This Section specifies procedural requirements for project closeout, including but not limited to:

        1.    Final cleaning

        2.    Inspection procedures

PART 2 – PRODUCTS  (Not Applicable)

PART 3 – EXECUTION

3.01    FINAL CLEANING

    A.    Cleaning: Employ experienced workers or professional cleaners for final cleaning. Clean each surface or unit to the condition expected in a normal, commercial building cleaning and maintenance program. Comply with manufacturer's instructions for all cleaning.

3.02    INSPECTION PROCEDURES

    A.    On receipt of a request for inspection, the Owner's Representative will either proceed with inspection or advise the Contractor of unfilled requirements. Upon the completion of all requirements the Owner's Representative will proceed with a final visual inspection.

END OF SECTION

Santa Rosa Junior College

SECTION 01784A

DISPOSAL OF ASBESTOS-CONTAINING MATERIAL – ASBESTOS ABATEMENT

PART 1 – GENERAL

1.01    RELATED DOCUMENTS

    A.    Drawings and general provisions of Contract, including General and Supplementary Conditions and Division-1 Specification Sections, apply to work of this section.

1.02    DESCRIPTION OF THE WORK

    A.    This section describes the disposal of Asbestos-Containing Materials. Disposal includes packaging of asbestos-containing waste materials. Disposal may be accomplished either by landfilling or converting asbestos-containing materials to non-asbestos waste.

1.03    SUBMITTALS

    A.    Before Start of Work: Submit the following to the Owner's Representative for review. Do not start work until these submittals are returned with Owner's Representative's action stamp indicating that the submittal is returned for unrestricted use.

        1.    Copy of state or local license for waste hauler.

        2.    Name and address of landfill where asbestos-containing waste materials are to be buried. Include contact person and telephone number.

        3.    Chain of Custody form and form of waste manifest proposed.

        4.    Sample of disposal bag and any added labels to be used.

PART 2 – PRODUCTS

2.01    DISPOSAL BAGS

    A.    Provide 6 mil thick leak-tight polyethylene bags labeled with proper labels.

PART 3 - EXECUTION

3.01    GENERAL

    A.    All waste is to be hauled by a waste hauler with all required licenses from all state and local authority with jurisdiction.

Santa Rosa Junior College

B.  Load all asbestos-containing waste material in disposal bags or leak-tight drums. All materials are to be contained in one of the following:

    1.  Two 6 mil disposal bags or

    2.  Two 6 mil disposal bags and a fiberboard drum or

    3.  Sealed steel drum with no bag

C.  Protect interior of truck or dumpster with Critical and Primary Barriers.

D.  Carefully load containerized waste in fully enclosed dumpsters, trucks or other appropriate vehicles for transport. Exercise care before and during transport, to insure that no unauthorized persons have access to the material.

E.  Do not store containerized materials outside of the Work Area. Take containers from the Work Area directly to a sealed truck or dumpster.

F.  Retain receipts from landfill or processor for materials disposed of.

G.  At completion of hauling and disposal of each load submit copy of waste manifest, chain of custody form, and landfill receipt to Owner's Representative.

END OF SECTION

# MICRO ANALYTICAL LABORATORIES, INC.

Page 1 of 7

**BULK ASBESTOS ANALYSIS - PLM (EPA/600/R-93/116, 1993)**

1041
Ralph Curran
Ralph Curran Co.
2139 Stonefield Lane
Santa Rosa, CA 95403

**PROJECT:**
**SANTA ROSA**
**JUNIOR COLLEGE**
**PLOVER LIBRARY**

Micro Log In  **85629**

Total Samples  31

Date Sampled  08/09/2006

Date Received  08/10/2006

Date Analyzed  08/14/2006

| SAMPLE INFORMATION | ASBESTOS INFORMATION QUANTITY (AREA %) / TYPES / LAYERS / DISTINCT SAMPLES | DOMINANT OTHER MATERIALS |
|---|---|---|
| Client: 1<br>Micro: 85629-01   Analyst: GM<br>RED LINOLEUM<br>CHECK OUT DESK - EXIT | TILE (RED): NONE DETECTED<br>MASTIC: NONE DETECTED | CARBONATE<br>SYNTHETIC MATERIAL |
| Client: 2<br>Micro: 85629-02   Analyst: GM<br>RED LINOLEUM<br>CHECK OUT DESK - ENTRANCE | TILE (RED): NONE DETECTED<br>MASTIC: 3% CHRYSOTILE | CARBONATE<br>SYNTHETIC MATERIAL |
| Client: 3<br>Micro: 85629-03   Analyst: GM<br>12" BROWN LINOLEUM<br>CHECK OUT DESK - ENTRANCE | TILE: NONE DETECTED<br>MASTIC: NONE DETECTED | CARBONATE<br>SYNTHETIC MATERIAL |
| Client: 4<br>Micro: 85629-04   Analyst: GM<br>CERAMIC TILE & MORTAR<br>BATHROOM | TILE: NONE DETECTED<br>ADHESIVE: NONE DETECTED<br>MORTAR: NONE DETECTED | ROCK FRAGMENTS<br>SYNTHETIC MATERIAL |
| Client: 5<br>Micro: 85629-05   Analyst: GM<br>WALL COVERING / GYPSUM BOARD<br>ENTRY MEN'S BATHROOM | NONE DETECTED | 3 % SYNTHETIC FIBERS<br><br>GYPSUM<br>ROCK FRAGMENTS |

Technical Supervisor: _____

Baojia Ke, Ph. D.    8/10/2006
Date Reported

NOTES: Weight % cannot be determined by PLM estimates are point counts. Asbestos fibers with diameter below wavelength may not be detected by PLM. The absence of asbestos in bulk of debris (insulating wise or in coverings), and in some compensations, including floor tiles, cannot be conclusively established by PLM, and should be confirmed by Transmission Electron Microscopy (TEM). Only contrast non-asbestos materials are indicated. The report cannot be interpreted as a conclusive identification of respectable materials or not. Quantities of non-asbestos fibers are estimated, not point counted. Preparation (of samples) grading, mixing, cutting bundles, sawing drying, if needed, by hydration. Acid extraction, ashing, or other matrix reduction techniques may be applied to some samples; results expressed are corrected for amount of matrix removed. Verbal / actual interferences may prevent detection of small asbestos fibers, and allow determination of some other properties. Note: all detection limits apply to visual estimates, subject to positive visual extraction. Remarks verify material dependent. Drawings of reference traces (continuous) cannot be reliable or reproducible by PLM. Level (fraction and interpolation of PLM extinction in TEM. The UPPER and LOWER (Upper and Lower Disturbance Limits) represent the highest and lowest, expected concentrations for an asbestos point count, based on Poisson distribution, and Poisson statistics. The Poisson definition of asbestos-containing construction materials is (% asbestos by weight) however, reliable determination of asbestos weight percents at this level cannot be done by PLM, and TEM is recommended. Sample heterogeneity is indicated by listing more than one distinct layer or material in the report. Layers are analyzed separately and asbestos percentages are reported for individual layers. Layer distribution is indicated among any layers in sample. Composite analysis by multilayered included as aggregate only. Layers are analyzed as single systems (sandwiches, less composites, and related matrix indicated) compositing is based on client descriptions of a material as "one compound". Claims are likely responsible for identification and description of bulk materials listed as layers. Laboratory sample descriptions may differ from descriptions given by client, and "Quality Control (QC) Codes: A100, a refer to bulk samples listed in the report. (Level codes: Poisson count or cumulative). Level materials confirmed after the NIST/EPA-R93/116, EPA/600/R-93/116, HIST/NVLAP Accreditation Lab Code: PLM/TEM. California ELAP Certification #1027. EPA test method 0 listed in the EPA method (600), with several improvements in analytical techniques. Unless otherwise stated in the report, all samples were received in acceptable condition for analysis. This report must not be used to claim product endorsement by NIST or any U.S. Government agency. This report pertains only to the samples tested and must not be reproduced except in full, with approval of Micro Analytical Laboratories.

# MICRO ANALYTICAL LABORATORIES, INC.

Page 2 of 7

BULK ASBESTOS ANALYSIS • PLM (EPA/600/R-93/116, 1993)

1041
Ralph Curran
Ralph Curran Co.
2139 Stonefield Lane
Santa Rosa, CA 95403

PROJECT:
**SANTA ROSA
JUNIOR COLLEGE
PLOVER LIBRARY**

Micro Log in: **85629**

Total Samples: 31

Date Sampled: 08/09/2006

Date Received: 08/10/2006

Date Analyzed: 08/14/2006

| SAMPLE INFORMATION | ASBESTOS INFORMATION QUANTITY (AREA %) / TYPES / LAYERS / DISTINCT SAMPLES | DOMINANT OTHER MATERIALS |
|---|---|---|
| Client: 6<br>Micro: 85629-06    Analyst: GM<br>TEXTURE / GYPSUM<br>JANITOR'S CLOSET | TEXTURE: NONE DETECTED<br><br>(NO GYPSUM BOARD IN THE SAMPLE) | 5 % CELLULOSE<br><br>CARBONATE<br>OPAQUES |
| Client: 7<br>Micro: 85629-07    Analyst: GM<br>TEXTURE / GYPSUM<br>MICROFILM ROOM | PLASTER: NONE DETECTED<br>SKIM COAT: NONE DETECTED<br><br>(NO GYPSUM BOARD IN THE SAMPLE) | GLASS FRAGMENTS<br>GYPSUM<br>OPAQUES<br>ROCK FRAGMENTS |
| Client: 8<br>Micro: 85629-08    Analyst: GM<br>9xTILE - PUMPKIN COLOR<br>MICROFILM ROOM | TILE: 2% CHRYSOTILE<br>MASTIC: 25% CHRYSOTILE | CARBONATE<br>SYNTHETIC MATERIAL<br>TAR |
| Client: 9<br>Micro: 85629-09    Analyst: GM<br>9xTILE (PUMPKIN)<br>A/V WORKROOM | TILE: 2% CHRYSOTILE<br>MASTIC: 25% CHRYSOTILE | CARBONATE<br>SYNTHETIC MATERIAL<br>TAR |
| Client: 10<br>Micro: 85629-10    Analyst: GM  BK<br>TEXTURE / GYPSUM<br>GRAPHICS AREA | PLASTER: NONE DETECTED<br>SKIM COAT: NONE DETECTED<br><br>NO GYPSUM BOARD IN THE SAMPLE | GLASS FRAGMENTS<br>GYPSUM<br>OPAQUES<br>ROCK FRAGMENTS<br>QC*:    R |

Technical Supervisor: _____    8/15/2006
Baojia Ke, Ph. D.    Date Reported

NOTES: Weight % cannot be determined by PLM estimation of bulk samples. Asbestos floors with diameter below 1 um may not be detected by PLM. The absence of asbestos in dust or debris (including wipe or microvacuum), and in some sampled materials, including roof tiles, cannot be conclusively established by PLM, and should be confirmed by Transmission Electron Microscopy (TEM). Only dominant nonasbestos materials are detected. This report may not be interpreted as a conclusive identification of non-friable (hard or soft). Quantities of non-asbestos fibers are estimated; not point counted. Preparation (all methods): picking, milling, teasing to reduce layer drying, if needed, by Material Acid digestion, ashing, or other matrix reduction techniques may be applied to some samples; not be applied to some samples. Various layered materials may prevent detection of small asbestos floors, and further determination of same layered properties. Fibers are mass & point counted to verify presence; asbestos is quantified by reduced visual estimation. Detection limit for material calibration, detection of asbestos traces (not by visual estimation) may exceed the quantification limit reporting level of PLM. Under association limit reporting level of PLM estimation is the level 0.1% UCL and LCL (Upper and Lower Confidence Limits) represent the highest and lowest expected concentrations for an unbiased bulk sound, based on reported concentration, and Poisson statistics. The CHI-DATA data floor of asbestos containing construction material is 0.1% asbestos by weight; however, reliable determination of asbestos weight percent at this level cannot be done by PLM, and TEM is recommended. Sample heterogeneity is indicated by listing more than one distinct layer or material on the report. Layers analyzed separately are reported individually, if by layers, if separate concentration (synonym) is shown in the report. Concerns reported pre-analysis of heterogeneity (complex and applicable only by layered soil systems bank/soil only as a sample) be listed in a short description of a material in "Note" component. Clients currently employ procedures for identification and description of bulk materials listed on field forms. Laboratory sample description may differ from description given to us. Quality Control (QC) Codes: A(4+2 = quality control association) and R = re-analysis detected in lab blank QHM 0034. Florida Cases be regulatory; R = all materials confirmed after multiple reanalyzations. NIST / NVLAP Accreditation Lab Code #101768. California ELAP Certification #1736. EPA test method is based on the EPA Interim Method (1982), with several improvements in analytical techniques. Unless otherwise stated in this report, all samples were received in acceptable condition for analysis. This report must not be used to claim product endorsement by NIST or any U.S. Government agency. This report pertains only to the samples listed and must not be reproduced except in full, with approval of Micro Analytical Laboratories.

5900 HOLLIS STREET, SUITE M - EMERYVILLE, CA 94608 - (510) 655-0824

# MICRO ANALYTICAL LABORATORIES, INC.

Page 3 of 7

### BULK ASBESTOS ANALYSIS - PLM (EPA/600/R-93/116, 1993)

1041
Ralph Curran
Ralph Curran Co.
2139 Stonefield Lane
Santa Rosa, CA 95403

**PROJECT:**
**SANTA ROSA**
**JUNIOR COLLEGE**
**PLOVER LIBRARY**

| | |
|---|---|
| Micro Log In | **85629** |
| Total Samples | 31 |
| Date Sampled | 08/09/2006 |
| Date Received | 08/10/2006 |
| Date Analyzed | 08/14/2006 |

| SAMPLE INFORMATION | ASBESTOS INFORMATION<br>QUANTITY (AREA %) / TYPES / LAYERS / DISTINCT SAMPLES | DOMINANT<br>OTHER MATERIALS |
|---|---|---|
| Client: 11<br>Micro: 85629-11<br>TILE UNDER CARPET<br>OFFICE      Analyst: GM | TILE: 2% CHRYSOTILE<br>TARRY MASTIC: 25% CHRYSOTILE<br>MASTIC (YELLOW): NONE DETECTED | CARBONATE<br>SYNTHETIC MATERIAL<br>TAR |
| Client: 12<br>Micro: 85629-12      Analyst: GM  BK<br>TEXTURE / GYPSUM<br>OFFICE | PLASTER: NONE DETECTED<br>SKIM COAT: NONE DETECTED<br><br>NO GYPSUM BOARD IN THE SAMPLE | GLASS FRAGMENTS<br>GYPSUM<br>OPAQUES<br>ROCK FRAGMENTS<br>OC*:      R |
| Client: 13<br>Micro: 85629-13      Analyst: GM<br>TEXTURE / GYPSUM<br>LOUNGE | PLASTER: NONE DETECTED<br>SKIM COAT: NONE DETECTED<br><br>(NO GYPSUM BOARD IN THE SAMPLE) | GLASS FRAGMENTS<br>GYPSUM<br>OPAQUES<br>ROCK FRAGMENTS |
| Client: 14<br>Micro: 85629-14      Analyst: GM  BK<br>TEXTURE<br>RESERVE ROOM | PLASTER: NONE DETECTED<br>SKIM COAT: NONE DETECTED<br>WALLPAPER GLUE: NONE DETECTED<br><br>NO GYPSUM BOARD IN THE SAMPLE | GLASS FRAGMENTS<br>GYPSUM<br>OPAQUES<br>ROCK FRAGMENTS<br>SYNTHETIC MATERIAL<br>OC*:      R |
| Client: 15<br>Micro: 85629-15      Analyst: GM  BK<br>ACOUSTIC CEILING TEXTURE<br>CHECK OUT DESK | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE<br>OC*: |

Technical Supervisor: _____      8/15/2006

Baoia Ke, Ph. D.                  Date Reported

NOTES: Weight % cannot be determined by PLM estimation or point count. Asbestos does not display color...

# MICRO ANALYTICAL LABORATORIES, INC.

Page 4 of 7

### BULK ASBESTOS ANALYSIS - PLM (EPA/600/R-93/116, 1993)

1041
Ralph Curran
Ralph Curran Co.
2139 Stonefield Lane
Santa Rosa, CA 95403

**PROJECT:**

**SANTA ROSA
JUNIOR COLLEGE
PLOVER LIBRARY**

Micro Log In  **85629**

Total Samples  31

Date Sampled  08/09/2006

Date Received  08/10/2006

Date Analyzed  08/14/2006

| SAMPLE INFORMATION | ASBESTOS INFORMATION QUANTITY (AREA %) / TYPES / LAYERS / DISTINCT SAMPLES | DOMINANT OTHER MATERIALS |
|---|---|---|
| Client: 16<br>Micro: 85629-16    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>CIRCULATION DESK | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE |
| Client: 17<br>Micro: 85629-17    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>PROCESSING ROOM | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE |
| Client: 18<br>Micro: 85629-18    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>LIBRARIAN ROOM | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE |
| Client: 19<br>Micro: 85629-19    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>STUDY ALCOVES | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE |
| Client: 20<br>Micro: 85629-20    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>READING ROOM | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICULITE |

Technical Supervisor:

Baojia Ke, Ph. D.

8/15/2006
Date Reported

NOTES: Weight % cannot be determined by PLM through use of point counts. Asbestos fibers with diameter below ~1 um may not be detected by PLM. The absence of asbestos found at sizes (including width or micrometers), and trace concentrations, including floor tiles, cannot be conclusively established by PLM, and should be confirmed by Transmission Electron Microscopy (TEM). Only significant non-asbestos materials are indicated. This report must not be interpreted as a conclusive identification of nonasbestos (NA) or not. Quantities of non-asbestos fibers are estimated, not point counted. Preparation (all samples) grinding, mixing, teasing crushing (acid drying, if needed, by formula. Acid dissolution, ashing or other matrix reduction techniques may be applied to some samples unless asbestos is suspected and amount of matrix removed. Interest based interferences may prevent detection of small asbestos fibers, and EDXRF determination of some crystal properties. Notes are made in such cases by the analyst. Precise extent of quantification calibrated via estimation. Detection limit is material dependent. Detection of asbestos traces (<0.1%) may not be reliable or reproducible by PLM. Lower quantities (NA) depending only of point estimation in this. The 85629-01 and 101 (Upper and Lower Confidence Limits) represent the highest and lowest expected concentrations for an expected point count, based on reported concentration and Poisson statistics. The Client-SRA definition of asbestos-making construction material is 1% asbestos by weight. However, reliable determination of asbestos weight percent can not be done by PLM, and TEM is recommended. Sample heterogeneity is indicated by listing more than one distinct layer or material on this report. Levels are analyzed separately and estimate percentages are reported for individual layers. If multiple samples are possible above any layer in a sample. Composite samples reported only on client's request. Composites only be layered and typical (MAB are) in material category and materials dependent. If listed as 'distinct' described as a material or 'point compound'. Claims are solely responsible for the selection and description of bulk materials listed on field forms. Laboratory can be described as may differ from descriptions given by the client. 'Quality Control (QC)' Codes: A104 a means either acceptable limit & no subsequent analyzed by this limit (SRM, NBSR, MSRA-102 etc). Codes are explained. R = all materials analyzed when multiple runs of each class. NIST/NVLAP Accreditation Lab Code: 101009-0, CA-ELAP Certificate #1577. EPA is identified is based on the EPA Interim Method (1982), with relevant implementations in analytical techniques. Unless otherwise stated in this report, all samples were received in acceptable condition by analysis. This report must not be used to claim product endorsement by NIST or any U.S. Government agency. This report pertains only to the samples tested and must not be reproduced except in full, with approval of Micro Analytical Laboratories.

# MICRO ANALYTICAL LABORATORIES, INC.

Page 5 of 7

### BULK ASBESTOS ANALYSIS - PLM (EPA/600/R-93/116, 1993)

1041
Ralph Curran
Ralph Curran Co.
2139 Stonefield Lane
Santa Rosa, CA 95403

**PROJECT:**
**SANTA ROSA**
**JUNIOR COLLEGE**
**PLOVER LIBRARY**

Micro Log In: **85629**

Total Samples: 31

Date Sampled: 08/09/2006

Date Received: 08/10/2006

Date Analyzed: 08/14/2006

| SAMPLE INFORMATION | ASBESTOS INFORMATION QUANTITY (AREA %) / TYPES / LAYERS / DISTINCT SAMPLES | DOMINANT OTHER MATERIALS |
|---|---|---|
| Client: 21<br>Micro: 85629-21    Analyst: GM<br>ACOUSTIC CEILING TEXTURE<br>TYPING ROOM | 2% CHRYSOTILE | GYPSUM<br>OPAQUES<br>VERMICLLITE |
| Client: 22<br>Micro: 85629-22    Analyst: GM<br>INTERIOR PLASTER | NONE DETECTED | GLASS FRAGMENTS<br>GYPSUM |
| Client: 23<br>Micro: 85629-23    Analyst: GM<br>INTERIOR PLASTER | NONE DETECTED | GLASS FRAGMENTS<br>GYPSUM |
| Client: 24<br>Micro: 85629-24    Analyst: GM<br>INTERIOR PLASTER | NONE DETECTED | GLASS FRAGMENTS<br>GYPSUM |
| Client: 25<br>Micro: 85629-25    Analyst: GM<br>INTERIOR PLASTER | NONE DETECTED | GLASS FRAGMENTS<br>GYPSUM |

Technical Supervisor _____     8/15/2006

,Baojia Ke, Ph. D.     Date Reported

NOTES: Weight % cannot be determined by PLM and cannot be accurately determined. Asbestos fibers with diameter below 0.25 μm may not be detected by PLM. The detection of asbestos in dust or debris (including wipe of microvacuum), and in some contract materials, including floor tiles, cannot be conclusively established by PLM, and should be confirmed by Transmission Electron Microscopy (TEM). Only contract nonreference materials are indicated. This report must not be interpreted as a conclusive identification of non-asbestos fibers or non-fibrous materials.