STEVEN D. MEACHAM, Esq.
California Bar No. 169977
PEEL BRIMLEY, LLP
3333 E. Serene Avenue, Suite 200
Henderson, Nevada 89074
Phone: (702) 990-7272
Fax: (702) 990-7273
Email: smeacham@peelbrimley.com

Attorneys for Plaintiff Project
Development Group, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROJECT DEVELOPMENT GROUP, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SONOMA COUNTY JUNIOR COLLEGE DISTRICT, of the County of Sonoma, State of California,<br><br>Defendant. | CASE NO.: C 07-02987 WHA<br><br>DECLARATION OF BRADLEY G. TAYLOR IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS |

I, Bradley G. Taylor, declare under penalty of perjury as follows:

1. I am an attorney with Peel Brimley LLP, I am over eighteen years of age and otherwise competent to testify, and I make the following statements based upon my personal knowledge.

2. Attached hereto as Exhibit "A" is a true and correct copy of my February 13, 2007 letter to Dr. Curtis L Groninga, Vice President of Administrative Services for the above-named Defendant and Clare M. Gibson, Associate General Counsel for the above-named Defendant. This letter plainly states in the first paragraph that Plaintiff Project Development Group, Inc. ("PDG") was submitting its claims in the sum of $470,048.52, which is composed of payment of the original contract sum of $127,300.00 and payment in the sum of

Declaration of Bradley G. Taylor in Support of Plaintiff's
Opposition to Motion to Dismiss - 1

$342,748.52 for claims relating to additional work performed as directed by the Defendant. This letter also plainly states that PDG was requesting an eighty (80) day time extension. This letter was transmitted to the Defendant with a four inch notebook of project documents fully supporting PDG's claims for additional compensation.

3. Attached hereto as Exhibit "B" is a true and correct copy of the Federal Express invoice Peel Brimley LLP received that indicates that my February 13, 2007 letter and the four inch notebooks were delivered to the Defendant and its legal counsel on February 14, 2007.

4. Attached hereto as Exhibit "C" is a true and correct copy of Clare M. Gibson's letter to me whereby the Defendant fully responds to PDG's claim; "On behalf of the Sonoma County Junior College District ("College"), I am responding to the claim dated February 13, 2007 that you submitted on behalf of your client, the Project Development Group, Inc. ("PDG")." The court will note that the College responds to each of PDG's individual claims beginning at page 3 as follows:

    a. "Claim #1 is rejected in its entirety;"

    b. "Claim #2 is rejected in its entirety;"

    c. "Claim #3 is rejected in its entirety;"

    d. "Claim #4 is rejected in its entirety;"

    e. "The College agrees that PDG is entitled to the claimed amount and one (1) day extension for work directed by the College;"

    f. "The College agrees that PDG is entitled to the adjusted sum of $117,785.29. The College agrees that PDG is entitled to an extension of time for this additional work, but only for 15 days, since PDG completely left the job site on January 17, 2007."

DATED this 9th day of August, 2007 at Las Vegas, Nevada.

*[signature]*
Bradley G. Taylor

Declaration of Bradley G. Taylor in Support of Plaintiff's
Opposition to Motion to Dismiss - 2

# EXHIBIT "A"

# PEEL BRIMLEY LLP

A LIMITED LIABILITY LAW PARTNERSHIP
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339 ✦ FAX: (206) 770-3490

FROM THE DESK OF:
BRADLEY G. TAYLOR, ESQ.
btaylor@peelbrimley.com

February 13, 2007

Dr. Curtis L. Groninga
Vice President, Administrative Services
Sonoma County Junior College District
1505 Mendocino Avenue
Santa Rosa, California 95401-4395

Clare M. Gibson
Associate General Counsel
School and College Legal Services of California
5350 Skylane Boulevard
Santa Rosa, California 95403

    Re:    Project Development Group, Inc. Claim for Additional Compensation
            Plover Asbestos Abatement Project, Santa Rosa Junior College
            Contract No. 880457

Dear Dr. Groninga and Ms. Gibson:

       On behalf of Project Development Group, Inc. ("PDG"), Peel Brimley LLP submits the enclosed claims in the amount of **$470,048.52**, plus interest on the liquidated sum until payment is actually received, for work performed on the Plover Asbestos Abatement Project at Santa Rosa Junior College ("Owner"). As a direct and proximate result of the Owner's acts and omissions, PDG is also entitled to an **eighty (80) calendar day time extension**.

CONTRACT BALANCE

       The $127,300.00 contract between PDG and the Owner provides that the Owner will, within thirty (30) days after submission and approval of payment estimates, pay the contractor ninety (90) percent of the estimate.[1] PDG submitted its Invoice No. 1-17-65 in the sum of $127,300.00 on November 20, 2006 because the full amount of the contract work was completed. Since that time and despite repeated demands for payment and representations from the Owner's representatives, the Owner has failed to make any payment to PDG for any of the contract work performed. The Owners failure to make a payment to PDG,[2] less retention, constitutes a breach of

---

[1] Paragraph 27(c) – PAYMENTS, Progress Payments.

[2] Based upon correspondence received from the Owner's project representative, PDG further believes that the Owner has intentionally refused to submit PDG's invoice no. 1-17-65 for approval and payment.

Dr. Curtis Groninga
Ms. Clare M. Gibson
February 13, 2007
Page 2

the contract for which PDG is entitled to recover damages in an amount of $127,300.00, and interest from December 19, 2006.

WORK PERFORMED OUTSIDE THE CONTRACT SCOPE

Project Development Group, Inc. has continual placed the Owner on notice that it was performing work at the Owner's direction that was not part of the original contract scope of work and has continually provided the Owner with estimates to perform the directed extra work. As PDG has now completed all of the work requested by the College, PDG timely presents its claims for additional compensation relating to the additional work performed. [3]

The enclosed project documents support the six distinct claims and time periods when the work outside the original contract scope was performed at the College's direction:

1. Selective demolition that was supposed to have been completed by others prior to PDG performing its original contract scope of work (October 16, 2005 – October 22, 2006);

2. Down time while the College investigated the discovery of asbestos in material previously represented as non-asbestos (November 7, 2006 – November 17, 2006);

3. Cleaning skim coat from plaster surface after asbestos abated under original contract scope of work, and additional testing for presence of asbestos (November 20, 2006 – December 10, 2006);

4. Demolition of all plaster surfaces regardless of the presence of asbestos in accordance with Peel Brimley LLP's letters to Clare Gibson dated December 7, 2006 and December 11, 2006, as well as several telephone conversations with Clare Gibson (December 11, 2006 – December 31, 2006);

5. Demolition of a second ceiling above the original ceiling in office areas within the library pursuant to the College's January 2, 2007 force account directive (January 2, 2007 and January 3, 2007); and

6. Plaster demolition above imbedded light fixtures performed pursuant to the College's January 3, 2007 force account directive (January 3, 2007 – January 21, 2007).

PDG's entitlement to recover its costs and markup for claims 1 – 4 above is discussed in Peel Brimley LLP's December 11, 2006 letter to Clare Gibson, which is

---

[3] Paragraph 49 – Resolution of Construction Claims.

Dr. Curtis Groninga
Ms. Clare M. Gibson
February 13, 2007
Page 3

enclosed and fully incorporated into PDG's claims submitted to the Owner. PDG is entitled to compensation for the work described under claims 5 and 6 based upon the College's directive to perform the work pursuant to the force account provisions of the contract. [4] All documents necessary to substantiate each claim are enclosed.

In addition to damages PDG has suffered as a direct and proximate result of the Owner's defective project specification, the Owner's breach of warranty as to the sufficiency of the project specifications, the Owner's misrepresentations as to the actual existing conditions, the Owner's breach of the covenant of good faith and fair dealing, and the Owner's breach of the contract, PDG is entitled to time extensions for each day PDG performed work outside the original contract scope at the Owner's direction.[5]

The following summarizes PDG's claims:

1. Selective demolition of fixtures that was to be performed by others prior to PDG's mobilization to the Project site - **$22, 290.43 and seven (7) calendar day time extension;**[6]

2. Standby time while the Owner investigated the source of asbestos after PDG completely removed the asbestos texture in accordance with the contract - **$14,415.84 and eleven (11) calendar day time extension;**[7]

3. Cleaning the skim coat from the plaster surface after the asbestos texture was completely removed in accordance with the contract - **$39,072.95 and twenty-one (21) calendar day time extension;**[8]

4. Complete demolition of all plaster surfaces performed at the Owner's direction, under protest, and with a full reservation of rights - **$122,575.19 and twenty-one (21) calendar day time extension;**[9]

5. Complete demolition of a second ceiling discovered after PDG completed demolition of the plaster ceiling as directed by the Owner and performed under the force account provisions of the contract - **$9,808.82 and one (1) calendar day time extension;**[10] and

---

[4] Paragraph 28(d) – <u>Modification of Contract, Force Account</u>.

[5] Paragraph 21 – <u>Delays and Time Extensions</u>.

[6] See enclosed Exhibit 8 for computation of damages.

[7] See enclosed Exhibit 11 for computation of damages.

[8] See enclosed Exhibit 15 for computation of damages.

[9] See enclosed Exhibit 19 for computation of damages.

[10] See enclosed Exhibit 23 for computation of damages.

Dr. Curtis Groninga
Ms. Clare M. Gibson
February 13, 2007
Page 4

      6. Demolition of plaster surfaces above imbedded light fixtures that was discovered after PDG completed demolition of the plaster ceiling as directed by the Owner and performed under the force account provisions of the contract - **$134,585.29 and nineteen (19) calendar day time extension.**[11]

Pursuant to the Paragraph 49 of the contract, PDG expects the Owner's formal written response to PDG's claims within 60 days.

                                  Very truly,

                                  PEEL BRIMLEY, LLP

                                  Bradley G. Taylor

cc:    David Beresford
        William Vasquez, Jr.
        Wade R. Dann, Esq.

---

[11] See enclosed Exhibit 27 for computation of damages.

# PROJECT DEVELOPMENT COMPANY, INC.

## PLOVER LIBRARY ASBESTOS ABATEMENT CLAIM ENCLOSURES

**EXHIBIT 1** – Peel Brimley's December 7, 2006 letter to Clare Gibson

**EXHIBIT 2** – Peel Brimley's December 11, 2006 letter to Clare Gibson

**EXHIBIT 3** – Technical Specifications for Plover Asbestos Abatement Project

**EXHIBIT 4** – Bid and Contract Documents

PDG'S CLAIM NO. 1: SELECTIVE DEMOLITION THAT WAS SUPPOSED TO HAVE BEEN COMPLETED BY OTHERS PRIOR TO PDG PERFORMING ITS ORIGINAL CONTRACT SCOPE OF WORK (OCTOBER 16, 2005 TO OCTOBER 22, 2006 = SEVEN (7) CALENDAR DAYS)

**EXHIBIT 5** – Relevant Project Correspondence

**EXHIBIT 6** – Relevant Project Documents

**EXHIBIT 7** – Relevant PDG Time Cards

**EXHIBIT 8** – Computation of Claim No. 1 Damages ($22,290.43)

PDG'S CLAIM NO. 2: DOWN TIME WHILE THE COLLEGE INVESTIGATED THE DISCOVERY OF ASBESTOS IN MATERIAL PREVIOUSLY REPRESENTED AS NON-ASBESTOS (NOVEMBER 7, 2006 TO NOVEMBER 17, 2006 = ELEVEN (11) CALENDAR DAYS)

**EXHIBIT 9** – Relevant Project Correspondence

**EXHIBIT 10** – Relevant PDG Time Cards

**EXHIBIT 11** – Computation of Claim No. 2 Damages ($14,415.84)

PDG'S CLAIM NO. 3: CLEANING SKIM COAT FROM PLASTER SURFACE AFTER ASBESTOS ABATED UNDER ORIGINAL CONTRACT SCOPE OF WORK, AND ADDITIONAL TESTING FOR PRESENCE OF ASBESTOS (NOVEMBER 20, 2006 TO DECEMBER 10, 2006 = TWENTY-ONE (21) CALENDAR DAYS)

**EXHIBIT 12** – Relevant Project Documents

**EXHIBIT 13** – Relevant Project Correspondence

**EXHIBIT 14** – Relevant PDG Time Cards

**EXHIBIT 15** – Computation of Claim No. 3 Damages ($39,072.95)

PDG's Claim No. 4: Demolition of all plaster surfaces regardless of the presence of asbestos (December 11, 2006 to December 31, 2006 = Twenty-One (21) Calendar Days)

**Exhibit 16** – Relevant Project Documents

**Exhibit 17** – Relevant Project Correspondence

**Exhibit 18** – Relevant PDG Time Cards

**Exhibit 19** – Computation of Claim No. 4 Damages ($122,575.19)

PDG's Claim No. 5: Demolition of a second ceiling above the original ceiling in office areas within the library pursuant to the Owner's January 3, 2007 force account directive (January 2, 2007 to January 3, 2007 = One (1) Calendar Day)

**Exhibit 20** – Relevant Project Documents

**Exhibit 21** – Relevant Project Correspondence

**Exhibit 22** – Relevant PDG Time Cards

**Exhibit 23** – Computation of Claim No. 5 Damages ($9,808.82)

PDG's Claim No. 6: Plaster demolition above imbedded light fixtures performed pursuant to the Owner's January 3, 2007 force account directive (January 3, 2007 to January 21, 2007 = Nineteen (19) Calendar Days)

**Exhibit 24** – Relevant Project Documents

**Exhibit 25** – Relevant Project Correspondence

**Exhibit 26** – Relevant PDG Time Cards

**Exhibit 27** – Computation of Claim No. 6 Damages ($134,585.29)

Generally Applicable Documents

**Exhibit 28** – Material Invoices

**Exhibit 29** – Debris Disposal Invoices

**Exhibit 30** – Lodging Invoices

**Exhibit 31** – Labor Rates

**Exhibit 32** – Summary of Actual Costs Incurred

# EXHIBIT "B"

Picked up: Feb 13, 2007    Cust. Ref.: 6123-002
Payor: Shipper    Ref. #3:    Ref. #2:
- Fuel Surcharge – FedEx has applied a fuel surcharge of 10.50% to this shipment.
- Distance Based Pricing, Zone 4
- FedEx has audited this shipment for correct packages, weight, and service. Any changes made are reflected in the invoice amount.

USAB

| | | Sender | Recipient | |
|---|---|---|---|---|
| Tracking ID | 856958216937 | BRADLEY G TAYLOR ESQ | DR CURTIS L GRONINGA | |
| Service Type | FedEx Priority Overnight | PEEL BRIMLEY LLP | SONOMA COUNTY JUNIOR COLLEGE D | |
| Package Type | FedEx Box | 3333 E SERENE AVE STE 200 | 1505 MENDOCINO AVE | |
| Zone | 04 | HENDERSON NV 89074-6571 US | SANTA ROSA CA 95401 US | |
| Packages | 1 | | | |
| Rated Weight | 8.0 lbs, 3.6 kgs | | | |
| Delivered | Feb 14, 2007  10:07 | Transportation Charge | | 49.00 |
| Svc Area | A4 | Fuel Surcharge | | 5.57 |
| Signed By | A.JOHNSON | Courier Pickup Charge | | 4.00 |
| FedEx Use | 004421879/0001530/_ | Total Charge | USD | $58.57 |

Picked up: Feb 13, 2007    Cust. Ref.: 6123-002
Payor: Shipper    Ref. #3:    Ref. #2:
- Fuel Surcharge – FedEx has applied a fuel surcharge of 10.50% to this shipment.
- Weather delay - Snow.
- Distance Based Pricing, Zone 4
- FedEx has audited this shipment for correct packages, weight, and service. Any changes made are reflected in the invoice amount.

USAB

| | | Sender | Recipient | |
|---|---|---|---|---|
| Tracking ID | 856958216948 | BRADLEY G TAYLOR ESQ | CLARE M GIBSON | |
| Service Type | FedEx Priority Overnight | PEEL BRIMLEY LLP | ASSOCIATE GENERAL COUNSEL | |
| Package Type | FedEx Box | 3333 E SERENE AVE STE 200 | 5350 SKYLANE BLVD SCHOOL AND C | |
| Zone | 04 | HENDERSON NV 89074-6571 US | SANTA ROSA CA 95403 US | |
| Packages | 1 | | | |
| Rated Weight | 8.0 lbs, 3.6 kgs | | | |
| Delivered | Feb 14, 2007  11:41 | Transportation Charge | | 49.00 |
| Svc Area | A4 | Fuel Surcharge | | 5.57 |
| Signed By | J.WALTON | Courier Pickup Charge | | 4.00 |
| FedEx Use | 004421879/0001530/_ | Total Charge | USD | $58.57 |

OST V261-3K (12/06)

# EXHIBIT "C"

# SCHOOL AND COLLEGE LEGAL SERVICES
## of California

*General Counsel*
Noel J. Shumway

*Attorneys*
Margaret M. Merchat
Janna L. Lambert
Joseph C. Kinkade
Nancy L. Klein
Elizabeth B. Mori
Stephen L. Hartsell
Marko H. Fong
Adam S. Ferber
Lenore A. Silverman
Clare M. Gibson
Carl D. Corbin
Patrick C. Wilson

*A Joint Powers Authority Serving School and College Districts throughout the State with offices in Capitola, Eureka, Hayward, San Rafael and Santa Rosa*

Reply to:
Santa Rosa
5350 Skylane Boulevard
Santa Rosa, CA 95403
(707) 524-2690
Fax (707) 578-0517
santarosa@sclscal.org

*Of Counsel*
Robert J. Henry
Lillian Lee Port
Susanne K. Reed
Patrick D. Sisneros
Ralph D. Stern

*Employer-Employee Relations Coordinator*
Robert S. Latchaw

April 20, 2007

SENT VIA MAIL & FAX: (206) 770-3490

Bradley G. Taylor, Esq.
Peel Brimley LLP
2014 East Madison Street, Suite 100
Seattle, WA 98112-2965

    Re:    Project Development Group, Inc. Claim for Additional Compensation
            Plover Asbestos Abatement Project

Dear Mr. Taylor:

    On behalf of the Sonoma County Junior College District ("College"), I am responding to the claim dated February 13, 2007 ("Claim") that you submitted on behalf of your client, the Project Development Group, Inc. ("PDG"). The College contracted with PDG for the Plover Asbestos Abatement Project ("Project") for $127,300. The Project scope was "removal of *all* asbestos in the building"[1] by November 1, 2006.[2] PDG walked off the job on November 7, 2006, leaving the work incomplete, and though it ultimately resumed work following Notice of Intent to Terminate, it did not complete its work until January 17, 2007.

    PDG now submits a Claim for $470,049, almost four times the original amount of the Contract, and seeks to extend the Contract time from 30 to 110 days. A summary of the pertinent facts is provided as background to the College's responses to each of the "six distinct claims" that comprise the Claim.

### A. SUMMARY OF FACTS

    **1.    It was imperative that PDG remove all asbestos by November 1, 2006.**

    The Notice to Proceed, dated October 2, 2006, required PDG to commence work and to "fully complete the work on this Project before the expiration of 30 calendar days from the Notice to Proceed." Accordingly, the Project was due to be completed on or before November 1, 2006. PDG knew that Alten Construction ("Alten"), the General Contractor for the remodeling

---

[1] Addendum No. 1, September 6, 2006 (emphasis added).
[2] Notice to Proceed, October 2, 2006.

of Plover Hall, was scheduled to commence work on November 1, 2006, and knew that it was critical for the asbestos abatement be fully completed by that time so that Alten could enter the building to timely perform its contract.

### 2. PDG breached its contract by failure to abate the asbestos by November 1, 2006, and by abandoning the incomplete work.

PDG did not complete its work on time. Instead, PDG stopped work and abandoned the Project on November 7, 2006, claiming that it had completed its work. However, samples taken on November 9, 2006, of residue remaining on the surface of the plaster ceiling, where the acoustical texture had been scraped off by PDG, tested positive for asbestos. PDG ignored the November 17, 2006, directive to resume and complete the work in accordance with the Contract requirements. Based on PDG's breach of its contract, the College sent Notice of Intent to Terminate to PDG and its surety on December 6, 2006. On the advice of its legal counsel, PDG resumed work on December 11, 2006, to abate the remaining asbestos by demolition of the ceiling.

### 3. PDG's unsubstantiated allegation that a separate "skim coat" remained on the ceiling was proven incorrect.

A substantial portion of PDG's Claim (Claims #2, #3, and #4) is based entirely on its erroneous and unsupported contention that the residue that remained on the ceiling—the so-called "skim coat"—is a separate substance from the acoustical texture identified in the August 16, 2006 asbestos survey report prepared by Certified Asbestos Consultant Ralph Curran and attached to the Project Specifications (the "Curran Report"). PDG argues that the Curran Report was inadequate because it represented that there was no asbestos in the "skim coat," and that PDG relied on the Curran Report in preparing its bid. As sole evidence offered to prove this alleged deficiency in the specifications, your correspondence of December 11, 2006 referenced Samples #12, #13, and #14 of the lab results attached to the Curran Report, which indicate: "Skim Coat: None Detected." However, these "skim coat" samples were not taken from the plaster ceiling, but rather from *walls* in the rooms identified in the sample information box.

In order to conclusively determine the composition of the residue, a sample of the acoustical ceiling texture that was initially tested by Mr. Curran, and a sample of the so-called "skim coat" that was subsequently taken from the ceiling by Mr. Gerhold, were sent to the Forensic Analytical Lab for analysis and comparison. The results, dated January 4, 2007, indicated that the substance PDG claimed was the "skim coat" is *identical* in composition with the acoustical ceiling texture that was to be completely removed. In short, they are one and the same: the "skim coat" is not a separate substance—in fact *there was no "skim coat*," only residue from the acoustical texture that was not completely removed from the ceiling through use of the ineffective scraping method that PDG elected over demolition.

Bradley G. Taylor, Esq.
April 20, 2007
Page 3 of 7

### 4. PDG has proceeded with its Claim despite the uncontroverted evidence that its Claim is based on a false premise.

I provided this information to you immediately, attaching the January 4, 2007 lab report to my January 5, 2007 correspondence to you. A copy of the correspondence and attached lab report are attached for your convenience. The Claim conspicuously omits any reference to this critical lab report—perhaps because this evidence completely undermines PDG's unsubstantiated assertion that the "skim coat" was a separate and undisclosed substance.

Please be advised that California's False Claims Act, Government Code section 12650 et seq., provides that a person who submits a false claim to a political subdivision shall be liable for treble damages, a civil penalty, and legal costs for knowingly presenting a political subdivision a false claim for payment.[3] "Knowingly" is defined to include having actual knowledge of the information, acting in deliberate ignorance or reckless disregard of the truth or falsity of the information. Proof of specific intent to defraud is not required.[4] Neither you nor PDG have offered any evidence to contradict the finding that there was no separate skim coat, but have chosen to proceed with the Claim in disregard of the information that there was no separate skim coat.

### 5. The College is processing payment for additional work despite PDG's failure to comply with contract change order and payment procedures.

PDG performed additional work on a force account basis near the end of the Project, for which the College intends to compensate PDG. However, despite repeated requests from the College, PDG has declined to submit a change order request in conformance with Article 28 of the Contract General Conditions so that it can be properly compensated for this additional work in accordance with the Contract.[5] Among other things, Article 28 requires that change order requests include a certification. PDG ignored the Contract change order requirements altogether and filed a Claim without first submitting a change order for all of the claimed amounts.

### B. THE COLLEGE'S RESPONSE TO THE CLAIMS

**Claim #1:**

PDG demands $22,290.43 and a seven (7) calendar day time extension for: "Selective demolition that was supposed to have been completed by others prior to PDG performing its original contract scope of work (October 16, 2006 – October 22, 2006)."

---

[3] California Government Code section 12651(a).
[4] California Government Code section 12650(b)(2). In that vein, I note that it is apparent that many of the photocopied time sheets included in the Claim have clearly been altered with white out. We are willing to give PDG the benefit of the doubt that these were innocent corrections, but if this matter goes to litigation, we will subpoena the originals for further investigation.
[5] See my letter of April 18, 2007, attached hereto.

Bradley G. Taylor, Esq.
April 20, 2007
Page 4 of 7

The College rejects this Claim on grounds that the work performed during this period was specifically within the original scope of the Contract (with the exception of $6,000 worth of work performed under separate contract between PDG and Alten).

Claim #1 appears to be a reiteration of PDG's October 24, 2006 change order request for $33,300 for the following work:

- "Selective demolition of casework, cabinets, shelving as discussed on preconstruction meeting of October 3, 2006..." for $16,875;
- "Carpet demolition in mezzanine area..." for $12,925
- "VAT and mastic under carpet..." for $3,500

By e-mail dated October 31, 2006, Richard Behrens rejected the change order request on grounds that all of this was part of PDG's original scope of work, and noting: "The District HAS NOT directed you to remove anything other than what was in your scope of work."

The "selected demolition" was clearly within PDG's Contract and was not the responsibility of others. Paragraph 4 of Addendum No. 2 states in part: "Removal of free standing furnishings, shelving, etc, is specified in the drawing, but there is no removal of fixed casework required unless the abatement contractor deems it necessary in order to complete the abatement." The third bulleted item in Addendum No. 1 states in part: "Contractor is responsible for removal of all asbestos in building, including floor tiles under existing carpet...." Paragraph 5 of Addendum No. 2 states in part: "Contaminated tiles are found under this carpet and therefore the carpet must be removed, and then the tiles and mastic.... If that [remaining] carpet is contaminated during abatement then it must be removed and abated as well."

The "selected demolition" in Claim #1 was expressly included in PDG's scope of work. Claim #1 is rejected in its entirety.

**Claim #2:**

PDG demands $14,415.84 and an eleven (11) calendar day extension for: "Down time while the College investigated the discovery of asbestos in material previously represented as non-asbestos (November 7, 2006 – November 17, 2006)."

The College rejects this Claim on grounds that the very limited work performed during this period[6] (more ineffective scraping) was within the original scope of work to remove all asbestos from the building, and on grounds that PDG stopped working on November 7, 2006, claiming, incorrectly, that it had completed its work. Claim #2 is rejected in its entirety.

---

[6] According to the time sheets included in Tab 10 of the Claim, a three-man crew worked for two weeks during the week ending on November 12, 2006 and the week ending on November 19, 2006.

Bradley G. Taylor, Esq.
April 20, 2007
Page 5 of 7

**Claim #3:**

PDG demands $39,072.95 and a twenty-one (21) calendar day extension for: "Cleaning skim coat from plaster surface after asbestos abated under original contract scope of work, and additional testing for presence of asbestos (November 20, 2006 – December 10, 2006)."

The College rejects this Claim on grounds that the work performed during this period (more ineffective scraping) was within the original scope of work to remove all asbestos from the building. Testing showed that PDG had not abated the asbestos. Further, as discussed above, testing performed by Forensic Analytical Lab (the lab requested by Mr. Vazquez) established that the so-called "skim coat" was not a separate substance, but was merely residue from the asbestos-containing acoustical coating that PDG failed to completely remove from the plaster ceiling. Claim # 3 is rejected in its entirety.

**Claim #4:**

PDG demands $122,575.19 and a twenty-one (21) calendar day extension for: "Demolition of all plaster surfaces regardless of the presence of asbestos in accordance with Peel Brimley LLP's letters to Clare Gibson dates December 7, 2006 and December 11, 2006, as well as several telephone conversations with Clare Gibson (December 11, 2006 – December 31, 2006)."

The College rejects this Claim on grounds that the work performed during this period (resuming abatement by demolition and removal of contaminated ceiling materials) was within the original scope of work to remove all asbestos from the building. The scope of work did not change; rather, PDG finally elected to use a more effective means of abatement than scraping. No additional work was directed by the College (or its legal counsel)—only satisfactory completion of the original Contract work. Claim # 4 is rejected in its entirety.

**Claim #5:**

PDG demands $9,808.82 and one (1) calendar day extension of time for: "Demolition of a second ceiling above the original ceiling in office areas within the library pursuant to the College's January 2, 2007 force account directive (January 2, 2007 and January 3, 2007)."

The College agrees that PDG is entitled to the claimed amount and one (1) day extension for work directed by the College.

**Claim #6:**

PDG demands $134,585.29 and a nineteen (19) calendar day extension of time for: "Plaster demolition above imbedded light fixtures performed pursuant to the College's January 3, 2007 force account directive (January 3, 2007 – January 21, 2007).

Bradley G. Taylor, Esq.
April 20, 2007
Page 6 of 7

     The College agrees that PDG is entitled to compensation for force account work directed by the College during this period. However, neither the amount of payment claimed nor the time extension requested are fully supported by the documents that were included in the Claim. Claim #6 includes $16,800 for construction debris removal. However, the invoice from World Environment & Energy, Inc., included in Tab 29 of the Claim, indicates that the last date for debris removal was on January 4, 2007. The College agrees that PDG is entitled to the adjusted sum of $117,785.29. The College agrees that PDG is entitled to an extension of time for this additional work, but only for 15 days, since PDG completely left the job site on January 17, 2007.

### C. SUMMARY

**1.    PDG is solely responsible for its decision regarding means and methods of abatement.**

     PDG contracted to remove all asbestos from the building. It was up to PDG to determine its means and method for abating the asbestos. PDG assumed the risk of electing a method for abating the asbestos on the ceiling (scraping off the acoustical texture) that carried a risk of leaving behind contaminated residue, unlike those contractors who bid the work with the intent to demolish the ceiling, thereby eliminating any risk of remaining asbestos contamination. Neither the College nor the Ralph Curran Company is responsible for PDG's business decision to use an ineffective method for removing the asbestos-containing acoustical texture from the plaster ceiling.

**2.    Liquidated damages will be assessed.**

     The College intends to assess liquidated damages against PDG based on its delayed performance. The total Project delay time was 77 days, but is offset by the 16 days of time extension granted in response to Claim #5 and Claim #6, reducing the amount of days for which liquidated damages apply to 61 days. At $400 per day, this amounts to $24,400. The College will withhold this amount from retention and final payment as provided in the Contract Documents.

**3.    The Alten Claim will be offset against amounts due to PDG.**

     Please be advised that the College has also received a Revised Claim from Alten, based on the delay caused by PDG. This Claim for $123,724 and an extension of time has been sent to you under separate cover with notice of PDG's obligation to indemnify the College pursuant to Article 25 and Article 29 of the General Conditions. The College will retain the full amount of this Claim from the amount due to PDG, but will return the difference between the amount claimed and the amount paid, if any.

Bradley G. Taylor, Esq.
April 20, 2007
Page 7 of 7

### 4. Partial payment will be released to PDG.

Despite PDG's failure to follow Contract procedures by submitting a final change order request and request for payment as outlined in Mr. Behren's January 31, 2007 e-mail, the College intends to move forward without waiting any longer for PDG's compliance by seeking Board approval for recordation of a Notice of Completion and processing of payment of undisputed amounts. PDG can expect a partial release of payment as follows:

| | |
|---|---|
| Base Contract Amount: | $127,300.00 |
| Claim #5: | +   9,808.82 |
| Claim #6 (adjusted): | +117,785.29 |
| Subtotal: | 254,894.11 |
| Less 10% Retention: | -  25,489.41 |
| Subtotal: | 229,404.70 |
| Liquidated Damages: | -  24,400.00 |
| Subtotal: | 205,004.70 |
| Stop Notice @ 125%[7] | -  20,662.96 |
| Subtotal: | 184,341.74 |
| Revised Alten Claim: | - 123,724.00 |
| TOTAL Subject to Release | $  60,617.74 |

All of the above is, of course, subject to Board approval. As indicated in my correspondence of April 18, 2007, we remain available to meet and confer in good faith in an attempt to negotiate a reasonable resolution of those matters that remain in dispute.

Sincerely,

Clare M. Gibson
Associate General Counsel

Attachments:  1/5/07   Letter from Clare Gibson and attached lab report
              4/18/07  Letter from Clare Gibson and attachment

c:   Dr. Curtis L. Groninga
     Jay Carpenter
     Paul Bielan
     Richard Behrens
     Wade Dann, Esq.

---

[7] World Environmental & Energy, Inc. has submitted a stop notice for $16,498.37. Under California law, the College must withhold 125% of this amount until PDG provides a release or a stop notice bond. (California Civil Code sections 3183 et seq., and 3196 et seq.)