1   ALAN STEPHEN HERSH, ESQ. (SBN 98394)
    PATRICK C. WILSON, ESQ.  (SBN 100487)
2   SCHOOL AND COLLEGE LEGAL SERVICES OF CALIFORNIA
    5350 Skylane Boulevard
3   Santa Rosa, California  95403
    (707) 524-2690
4   (707) 578-0517 FAX
    pwilson@sclscal.org
5
    Attorneys for Defendant and Counterclaimant
6   SONOMA COUNTY JUNIOR COLLEGE DISTRICT

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  PROJECT DEVELOPMENT GROUP, INC.,          CASE NO:  C 07-02987 WHA
    a Pennsylvania corporation
12
            Plaintiff,                        **ANSWER TO AMENDED COMPLAINT**
13                                            **FOR DAMAGES BY THE SONOMA**
    vs.                                       **COUNTY JUNIOR COLLEGE DISTRICT**
14
    SONOMA COUNTY JUNIOR COLLEGE              **AND COUNTERCLAIM**
15  DISTRICT, of the County of Sonoma, State of
    California,
16                                            **JURY TRIAL REQUESTED**
            Defendant.
17

18  _____

19  SONOMA COUNTY JUNIOR COLLEGE
    DISTRICT, a public entity,
20
            Counterclaimant,
21  vs.

22  PROJECT DEVELOPMENT GROUP, INC., a
    Pennsylvania corporation,
23
            Counterdefendant.
24

25

26

27
                                -1-
28
                                    ANSWER TO AMENDED COMPLAINT
                                             AND COUNTERCLAIM
                                               C 07-02987 WHA

The Sonoma County Junior College District ("College District") answers the amended complaint for damages e-filed by the Project Development Group, Inc. ("PDG") as follows.

1. The College District admits the allegations of paragraph 3.

2. The College District denies the allegations of paragraphs 9, 10, 11, 12, 18, 19, 22, 23, 28, 29, 30, 31, 32, 33, 35, 37, 38, 39, 40, 41 and 42.

3. Responding to paragraph 1, the College District states that PDG is a Pennsylvania corporation doing business as PDG Environmental, Inc. with an active California contractor's license as of September 7, 2007. Except as so admitted, the College District denies each allegation of this paragraph.

4. Responding to paragraph 2, the College District admits it is a public educational institution; the main campus is located in Santa Rosa, California. Except as so admitted, the College District denies each allegation of this paragraph.

5. Responding to paragraph 4, the College District admits the first sentence of that paragraph. No exhibit is attached to the amended complaint and therefore the College District denies the second sentence. Responding to the third sentence, the asbestos abatement project was publicly bid based on the contract documents. Responding to the fourth sentence, bidders were provided with an asbestos survey by Ralph Curran Company, technical specifications, a one page oversized "demo furniture floor plan" for furniture and selective demolition, two addendums, and other information (including the information available at the pre-bid conference). Bidders could reasonably rely on this information. The College District has not reviewed PDG's bid preparation documents and therefore cannot respond to the fifth sentence. Except as so admitted, the College District denies each allegation of this paragraph.

-2-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

6.      Responding to paragraph 5, the College District states that the technical specifications and asbestos survey are as set forth in those documents, which are part of the contract documents.  There was no "skim coat" layer located between the plaster ceiling and the acoustical material in the Plover library.  If demolition was an efficient means or method to remove the asbestos, the bidders could propose utilization of that means or method of abatement.  Except as so admitted, the College District denies each allegation of this paragraph.

7.      Responding to paragraph 6, the College District states that the provisions of Addendum No. 1 are as set forth in that document.  The Addendums should be read in concert with the technical specifications and other contract documents.  Except as so admitted, the College District denies each allegation of this paragraph.

8.      Responding to paragraph 7, the College District admits that bid opening was on September 11, 2006.  There were eight bids with a low bid by PDG of $127,300.  The next low bid was $136,000.  The high bid at $246,700.  Except as so admitted, the College District denies each allegation of this paragraph.

9.      Responding to paragraph 8, the College District admits the first sentence.  The College District denies the second and third sentences of that paragraph.  Except as so admitted, the College District denies each allegation of this paragraph.

10.     Responding to paragraph 13, the College District denies the first two sentences of that paragraph.  The College District is unclear about the apparent  reference to a letter dated November 9, 2006.  Except as so admitted, the College District denies each allegation of this paragraph.

-3-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

11.      Responding to paragraph 14, the College District denies that NorBay Consulting found a "skim coat" on the ceiling.  During its inspection, NorBay observed a thin layer of asbestos-containing material on portions of the ceiling, the removal of which was within the scope of work of the PDG contract.  The College District admits that PDG wrote an e-mail dated November 13, 2006. The College District admits PDG has demanded that the College District pay it money for the so-called "extra work."  Except as so admitted, the College District denies each allegation of this paragraph.

12.      Responding to paragraph 15, the College District admits that a College official sent PDG a letter dated November 17, 2006, that, among other things, advised PDG of the California False Claims Act.  Except as so admitted, the College District denies each allegation of this paragraph.

13.      Responding to paragraph 16, the College District states that, after PDG performed its initial scraping of the ceiling, residual asbestos-containing material remained on portions of the ceiling. There was no separate "skim coat" on the ceiling in the Plover library.   Asbestos sampling results were sent to PDG on or about December 4, 2006.  Except as so admitted, the College District denies each allegation of this paragraph.

14.      Responding to paragraph 17, the College District admits it sent PDG a letter dated December 6, 2006 which included notification of its intent to terminate the contract.  Except as so admitted, the College District denies each allegation of this paragraph.

15.      Responding to paragraph 20, the College District states that PDG sent a letter to attorney Clare Gibson dated  December 7, 2006 indicating, among other things, that PDG would

-4-

demolish the ceiling in the Plover library and that it "reserves" its rights. Except as so admitted, the College District denies each allegation of this paragraph.

16.     Responding to paragraph 21, the College District states that PDG removed ceiling material on or about the dates stated. Except as so admitted, the College District denies each allegation of this paragraph.

17.     Responding to paragraphs 24 and 25, the College District admits that PDG performed force account work at the direction of the College District with a value of $9,808.82. The College District agrees that the value of that work should be added to the original contract amount and that PDG is also entitled to a one (1) day extension of time. However, PDG is entitled to partial payment only because of set off adjustments due to liquidated damages, the stop notice by World, and the Alten delay claim. Except as so admitted, the College District denies each allegation of these paragraphs.

18.     Responding to paragraph 26, the College District agrees that PDG performed additional force account work with a value of $111,895.89 and was entitled to a fifteen (15) day time extension. Except as so admitted, the College District denies each allegation of this paragraph.

19.     Responding to paragraph 27, the College District states that it has properly responded to PDG's request for additional compensation. Except as so admitted, the College District denies each allegation of this paragraph.

20.     Responding to paragraph 34, the College District states that it has properly withheld the $123,724 Alten delay claim pursuant to paragraph 29 of the contract documents. Except as so admitted, the College District denies each allegation of this paragraph.

-5-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

21.     Responding to paragraph 36, the College District states that it issued payment to PDG on or about May 3, 2007 in the amount of $55,317.28 in response to the article 49 claim submitted by PDG's attorney.  The parties have a dispute regarding PDG's entitlement to any additional sum.  Except as so admitted, the College District denies each allegation of this paragraph.

## AFFIRMATIVE DEFENSES

1.     The amended complaint fails to state a cause of action.

2.     PDG failed to mitigate its claimed damages.

3.     PDG failed to submit a claim to the College District in accordance with the California Government Claims Act prior to commencing this lawsuit.

4.     PDG failed to comply with the contract documents regarding force account work.

5.     PDG has unclean hands as more fully described in the counterclaim.

6.     PDG failed to comply with the contract documents by its failure to attend the pre-bid conference per paragraph 2 of the instructions to bidders.

7.     PDG failed to comply with the contract documents by failing to visit the site of the proposed work so as to fully inform PDG of all conditions in and about the work site per paragraph 27 of the instructions to bidders.

8.     PDG failed to comply with the contract documents by failing to provide proper worker certifications.

## PRAYER

WHEREFORE, defendant prays as follows:

1.     That plaintiff take nothing by reason of its amended complaint and that judgment be rendered in favor of defendant;

2.     That defendant be awarded its costs of suit incurred in defense of this action; and

3.     For such other relief as the Court deems proper.

-6-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

## COUNTERCLAIM BY SONOMA COUNTY JUNIOR
## COLLEGE DISTRICT VERSUS PROJECT DEVELOPMENT
## GROUP, INC.

The College District alleges:

1.    The College District is a California public entity.


### First Counterclaim
### (Liquidated Damages)

2.    The College District and PDG entered into an asbestos abatement contract on or about September 25, 2006. The contract required PDG to abate asbestos material in the Plover library located at the College District's Santa Rosa campus.

3.    Paragraph 19 of the contract provided that time was of the essence with regard to the College District-PDG abatement contract.

4.    The contract further provided that if PDG failed to complete the contract work within the time fixed for completion, PDG shall be liable to the College District in the amount of $400 for each such calendar day of  unexcused delay as liquidated damages.

5.    PDG was required to fully complete the work on the project before the expiration of thirty (30) calendar days from the date set forth in the Notice to Proceed, that is, thirty (30) days following October 2, 2006 (plus any extensions granted to PDG for excusable delay).

6.    PDG completed the asbestos abatement project on January 17, 2007.

7.    Thus, it took PDG seventy-seven (77) calendar days to complete the project beyond the deadline set forth in the contract.  PDG is entitled to sixteen (16) calendar days of excused delay

-7-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

due to its force account work.  Therefore, the total number of calendar days of unexcused delay by PDG is sixty-one (61) days.

        8.      PDG owes the College District $24,400 in liquidated damages (61 days x $400).

**Second Counterclaim**
**(Indemnity and Hold Harmless)**

        9.      Paragraph 29 of the contract provides that PDG shall indemnify and hold the College District harmless with regard to, among other things, any loss or claim arising out of or in connection with PDG's performance of the contract.

       10.     At the time it commenced its work, PDG was aware that Alten Construction ("Alten") was set to proceed with its remodeling contract with the College District at the Plover library on or about November 1, 2006.

       11.     PDG's untimely performance of its contract obligations delayed Alten from timely prosecuting its contract with the College District.

       12.     Alten has submitted a delay claim to the College District in the amount of $123,724.

       13.     Pursuant to paragraph 29 of the contract, PDG is obligated to indemnify and hold the College District harmless with regard to the Alten delay claim.  Public Contract Code § 7107(c) permits the College District to withhold up to 150% of the disputed sum.  The College District is withholding $148,624.47 for this claim.

-8-

**Third Counterclaim**
**(Stop Notice)**

14.    The College District received a stop notice from World Environment and Energy, Inc. ("World") in the amount of $16,498.37.  World provided services to PDG with regard to the Plover library project.  World alleges that PDG has failed to pay World for all of its work on the job.

15.    California Civil Code § 3186 requires the College District to withhold the stop notice sum until PDG provides a release from World or until a stop notice bond is submitted per the California Civil Code.  Neither event has occurred and therefore the College District has withheld $16,498.37 from the contract balance, plus 25% to provide for the public entity's reasonable costs of any litigation thereunder.

**Fourth Counterclaim**
**(False Claim re: Demo of Shelving and Furnishings at the Plover Library)**

16.    PDG, as a bidder on the Plover library asbestos abatement project, was given, among other contract documents, an oversized sheet called "demo furniture floor plan."  This "demo sheet" identified existing furniture, shelving and equipment in the Plover library that was to be removed by the abatement contractor prior to the commencement of the asbestos abatement in the Plover library.

17.    Addendum No. 2 to the contract dated September 7, 2006, refers to this "demo sheet." Addendum No. 2 provides, among other things, that "removal of free standing furnishings, shelving, etc is specified on the drawing, but there is no removal of fixed casework required unless the abatement contractor deems it necessary in order to complete the abatement."

-9-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

18.    The successful bidder was therefore obligated to remove the furniture, shelving and equipment identified in the "demo sheet" and Addendum No. 2 as part of the scope of work for the asbestos abatement project.    PDG  should have factored this requirement into its bid.

19.    On February 13, 2007, PDG, through its attorney, submitted six claims to the College District pursuant to paragraph 49 of the abatement contract.    The first claim demanded $22,290.43 plus a seven (7) calendar day time extension.    PDG claims that this extra sum is due to PDG for its "selective demolition of fixtures" in the Plover library, including the removal of shelving, furniture and other free standing furnishings.    In fact, this work was within the scope of work of PDG's contract with the College District, as described in the "demo sheet" and Addendum No. 2.

20.    The claim by PDG for the cost of this "extra work" was a false claim within the meaning of California Government Code § 12651 since PDG knew it was actually false, it acted in deliberate ignorance of the truth, or it acted in reckless disregard of the truth.


**Fifth Counterclaim**
**(False Claim re: Demo of the Alleged "Skim Coat")**

21.    PDG asserts that it abated all of the asbestos required by the College District-PDG contract on or before November 7, 2006.    On November 8, 2006, NorBay Consulting inspected the Plover library at the College District's request to see if PDG had, in fact, removed the asbestos required by the contract. During its inspection, NorBay Consulting observed a thin film of asbestos-containing material remaining on portions of the plaster ceiling in the Plover library.    According to NorBay Consulting, it was very clear that PDG had attempted to remove this material from the

-10-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

plaster, but remnants were nonetheless observed throughout the ceiling area.  When advised of this finding, PDG asserted that the thin film was a separate "skim coat," and that it would remove this asbestos-containing material only if it received additional compensation beyond the agreed contract price.  The College District disagreed with PDG's assertion.  Thereafter, the College District arranged for that substance to be tested to determine if it was or was not the same as the acoustical material that was to be removed per the abatement contract.  Samples of the asbestos material were sent to Forensic Analytical, a laboratory in Hayward, California.  On January 3, 2007, the lab compared the two materials.  The test results showed that each of the two substances was composed of the same percentage of fibrous and non-fibrous particles.  Thus, each substance was the same as the other in the following respects:

| Acoustical Ceiling Material (to be removed per the contract) | | So-called "Skim Coat" (which PDG says is a separate material) | |
| --- | --- | --- | --- |
| White asbestos | 3% | White asbestos | 3% |
| White cellulose | trace | White cellulose | trace |
| Off-white limestone | 70% | Off-white limestone | 70% |
| Gold mica | 10% | Gold mica | 10% |
| Off-white paint | 2% | Off-white paint | 2% |

22.    A true and correct copy of this lab analysis is attached as Exhibit 1 hereto.

23.    The College District sent these test results to PDG on January 5, 2007.  At the same time, the College District advised PDG that the test results showed that the "skim coat" was, in fact, not a separate substance, but residue from the acoustical texture PDG was obligated to remove per the contract.   PDG has never provided any evidence to the College District to the contrary.

-11-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

24.    On February 13, 2007, approximately one month after being advised of the test results set forth in Exhibit 1 hereto, PDG submitted three (3) claims to the College District totalling $176,063.98 seeking additional compensation for the "extra work" performed by PDG to remove the so-called "skim coat" that remained on the ceiling of the Plover library.  PDG also claimed a fifty-three (53) calendar day time extension.

25.    PDG's claims that its removal of the asbestos-containing material on the ceiling was outside the scope of the contract were without any factual basis.  In fact, as described in Exhibit 1, the "skim coat" was simply a residual film of asbestos material that remained on the ceiling after PDG's efforts to scrape it off proved ineffective.

26.    PDG's claims for this so-called "extra work" are false claims within the meaning of California Government Code §12651 since  PDG knew its claims were actually false, it acted in deliberate ignorance of the truth, or it acted in reckless disregard of the truth.


**PRAYER**

The College District prays:

1.    For liquidated damages of $24,400 or such other sum proven at trial.

2.    That it be indemnified and held harmless by PDG regarding the Alten delay claim.

3.    For a determination that the College District has properly withheld funds in response to the stop notice filed by World.

4.    For appropriate penalties for each false claim submitted to the College District by PDG.

5.    For attorneys' fees and costs.

-12-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA

6.    For such other relief as the Court deems appropriate.

Dated: 9-18-07

SCHOOL AND COLLEGE LEGAL SERVICES
OF CALIFORNIA


By: _____
       Patrick C. Wilson
       Attorneys for Defendant Sonoma County
       Junior College District

-13-

ANSWER TO AMENDED COMPLAINT
AND COUNTERCLAIM
C 07-02987 WHA


**Forensic Analytical**

# PLM Characterization
## (Visual Area Estimation)

NorBay Consulting
Robert Gerhold
2563 Heatherstone Dr.

San Rafael, CA 94903

| | |
|---|---|
| **Client ID:** | 3982 |
| **Report Number:** | P000017 |
| **Date Received:** | 12/27/06 |
| **Date Analyzed:** | 01/03/07 |
| **Date Printed:** | 01/04/07 |
| **First Reported:** | 01/03/07 |

**Job ID/Site:**   2623 - SRJC-Plover Library

**Date(s) Collected:**

| | |
|---|---|
| **FASI Job ID:** | 3982 |
| **Total Samples Submitted:** | 2 |
| **Total Samples Anayzted:** | 2 |

| Sample ID | Lab Number | % | Gross Description | % |
|---|---|---|---|---|
| SRJC-PID-PLM-1 | 10594335 | | **Off White Simi-Fibrous Material with Paint** | |

**Fibrous Particle(s):** White Asbestos — 3    **Non-Fibrous Particle(s):** Off-White Limestone — 70
     White Cellulose — Trace       Gold Mica — 10
                 Off-White Paint — 2

Comment:  Samples in this report appear to be consistent with each other.

| Sample ID | Lab Number | % | Gross Description | % |
|---|---|---|---|---|
| SRJC-PID-PLM-2 | 10594336 | | **Off White Simi-Fibrous Material with Paint** | |

**Fibrous Particle(s):** White Asbestos — 3    **Non-Fibrous Particle(s):** Off-White Limestone — 70
     White Cellulose — Trace       Gold Mica — 10
                 Off-White Paint — 2

Comment:  Samples in this report appear to be consistent with each other.

*James Flores, Laboratory Supervisor, Hayward Laboratory*

Analytical results and reports are generated by Forensic Analytical at the request of and for the exclusive use of the person or entity (client) named on such report. Results, reports or copies of same will not be released by Forensic Analytical to any third party without prior written request from client. This report applies only to the sample(s) tested. Supporting laboratory documentation is available upon request. This report must not be reproduced except in full, unless approved by Forensic Analytical. The client is solely responsible for the use and interpretation of test results and reports requested from Forensic Analytical. Forensic Analytical is not able to assess the degree of hazard resulting from materials analyzed. Forensic Analytical reserves the right to dispose of all samples after a period of thirty (30) days, according to all state and federal guidelines, unless otherwise specified.  All samples were received in acceptable condition unless otherwise noted.