# PEEL BRIMLEY LLP

### A LIMITED LIABILITY LAW PARTNERSHIP
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122
(206) 770-3339 ✦ FAX: (206) 770-3490

FROM THE DESK OF:
BRADLEY G. TAYLOR, ESQ.
btaylor@peelbrimley.com

November 19, 2007

The Honorable Judge William Alsup
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

RE:     *Project Development Group, Inc. v. Sonoma County Junior College District*, Court Cause
        No. 07-CV-02987-WHA
        **Plaintiff's Motion for Protective Order**

Dear Judge Alsup:

Pursuant to CR 26(c)(1), (4), and (7), Plaintiff moves the Court for a protective order that discovery may not be conducted relating to PDG Environmental, Inc.'s (PDGE)[1] filing Form 10-Q with the United States Securities and Exchange Commission. Plaintiff further requests the court to stay the time for Plaintiff to respond to Defendant's written discovery until ten (10) days after the Court issues its decision on Plaintiff's motion for a protective order. Plaintiff's motion is based upon the court file and the enclosed documents.

Plaintiff satisfied its obligation to "meet and confer" with Defendant about this matter when the Parties have exchanged written correspondence relating to this issue and had a telephone conversation about the same on November 16, 2007.

<u>DEFENDANT'S DISCOVERY REQUESTS AT ISSUE.</u>

On October 29, 2007, Plaintiff received Defendant's First Requests for Admissions, Second Request for Production of Documents, and First Set of Interrogatories that request discovery and information irrelevant to Defendant's claims and defenses alleged in the above-referenced matter before the Court. Specifically, Defendant's written discovery requests confidential information relating to a quarterly report PDGE filed with the Securities and Exchange Commission on July 31, 2007, that is irrelevant to the pending litigation and is not calculated to lead to the discovery of admissible evidence.

Plaintiff requests relief from the Court and a protective order relating to the following written discovery sought by Defendant:

1.      Request for Admission No. 2;
2.      Interrogatories No. 13 through No. 20;

---

[1] Plaintiff Project Development Group, Inc. is a subsidiary of PDG Environmental, Inc., a publicly traded Pennsylvania corporation.

The Honorable Judge William Alsup
United States District Court, Northern District of California
November 19, 2007
Page 2

3.    Document Requests No. 1 through No. 9; and
4.    Document Request No. 10 to the extent it relates to Interrogatories No. 13 through
      No. 20.

See enclosed Affidavit of Bradley G. Taylor in Support of Motion for Protective Order.

RULE 26(C) PROTECTIVE ORDERS CONSTITUTE APPROPRIATE DISCOVERY RELIEF WHEN THE
REQUESTED DISCOVERY IS NOT RELEVANT, THE INQUIRY IS BASED ON MERE SUSPICION OR
SPECULATION, AND WHERE COMPLIANCE IS UNDULY BURDENSOME.

Fed.R.Civ.P. 26(c) protects litigants from undue burden and expense by authorizing the
Court to issue protective orders and relief from oppressive discovery. The Court is specifically
authorized to order that "discovery not be had," "that certain matters not be inquired into," and
"that a trade secret or other confidential . . . commercial information not be revealed."
Fed.R.Civ.P. 26(c)(1), (4), and (7).

Certainly, matters not relevant to the claims and defenses alleged in the pleadings are not
discoverable. Fed.R.Civ.P. 26(b)(1). The stated basis for Defendant's discovery request is the
information is necessary to support the Defendant's counterclaims under the False Claims Act,
which are stated with specificity:

1.    PDG's claim for costs associated with extra work to perform selective demolition is
      a false claim "since PDG knew it was actually false, it acted in deliberate ignorance
      of the truth, or it acted in reckless disregard of the truth;" [2] and

2.    PDG's claim for costs associated with extra work to remove asbestos-containing
      material outside the contract scope of work is a false claim "since PDG knew it was
      actually false, it acted in deliberate ignorance of the truth, or it acted in reckless
      disregard of the truth" because PDG did not capitulate to the Defendant's
      interpretation of the contract technical specifications and test result Defendant
      submitted to PDG. [3]

Defendant's alleged basis for its False Claims Act violations are very specific and do not even
remotely include claims relating to PDGE's corporate management, Project Development Group,
Inc.'s bid preparation, or Project Development Group, Inc.'s motivations for bidding the
Defendant's asbestos abatement project. Plainly, Defendant's current discovery requests are not
relevant to Defendant's alleged claims and defenses, and are clearly not propounded for purposes
"reasonably calculated to lead to the discovery of admissible evidence" relating to its stated
claims and defenses. PDGE's July 31, 2007 SEC Form 10-Q filing discloses an employee
embezzlement incident that is confined the actions of a past manager of the Seattle office and has

---

[2] See, Defendant's Answer to Amended Complaint and Counterclaim, page 10, line 11.

[3] See, Defendant's Answer to Amended Complaint and Counterclaim, page 12, line 11.

The Honorable Judge William Alsup
United States District Court, Northern District of California
November 19, 2007
Page 3

no relationship to Defendant's claims and defenses.  See enclosed Declaration of David
Beresford in Support of Motion for Protective Order.

Even if the information requested is relevant to the Defendant's claims and defenses, the
Court must balance the relevancy and the Defendant's need for the requested discovery of
information against the burden or harm caused to Plaintiff.  Discovery is not permissible if the
burden placed upon Plaintiff is unduly burdensome.[4]

Discovery is not relevant to the subject matter of the litigation where the inquiry is based
upon mere speculation or suspicion.[5]  Further, mere conclusory allegations of a scheme or pattern
of conduct are insufficient to overcome the burden upon Plaintiff to comply with Defendant's
vague and overreaching discovery requests.

The breadth and vagueness of Defendant's discovery requests based solely upon
Defendant's speculation that statements contained in PDGE's Form 10-Q filing with the
Securities and Exchange Commission may somehow relate to the matter before the court
certainly reveals Defendant's intent to fish through all of Plaintiff's confidential corporate
records in the hope of finding support for claims completely unrelated to Defendant's allegations
in the above-referenced matter.

Very truly,

PEEL BRIMLEY LLP

Bradley G. Taylor, Esq., Pro Hac Vice
Attorneys for Plaintiff Project Development
Group, Inc.

Enclosures:    Affidavit of Bradley G. Taylor with attachments
               Affidavit of David Beresford

cc:   Project Development Group, Inc.

---

[4] See, *Koch v. Koch Industries*, 1991 WL 241814 (D.Kan. 1991)(citing, *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed.Cir. 1990).

[5] See, *Sirota v. Penske Truck Leasing Corp.*, 2006 WL 708910 (N.D.Cal. 2006))(citing, *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed.Cir. 1990).

1   BRADLEY G. TAYLOR, Esq.  (Pro Hac Vice)
    WADE R. DANN, Esq. (Pro Hac Vice)
2   PEEL BRIMLEY, LLP
    2014 East Madison Street, Suite 100
3   Seattle, Washington 98122
    Phone: (206) 770-3339
4   Fax: (206) 770-3490
    Email: btaylor@peelbrimley.com
5
    DAVID ERICKSEN, Esq. (#153923)
6   SEVERSON & WERSON
    One Embarcadero Center, Suite 2600
7   San Francisco, California 94111
    Phone: (415) 398-3344
8   Fax: (415) 956-0439
9   *Attorneys for Plaintiff Project
    Development Group, Inc.*
10
11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12
13  PROJECT DEVELOPMENT GROUP,
    INC., a Pennsylvania corporation,          CASE NO.: CV 07-02987 WHA
14
                         Plaintiff,             DECLARATION OF BRADLEY G.
15                                              TAYLOR IN SUPPORT OF MOTION
    vs.                                         FOR PROTECTIVE ORDER
16
    SONOMA COUNTY JUNIOR COLLEGE
17  DISTRICT, of the County of Sonoma, State
    of California,
18
                         Defendant.
19

20      I, Bradley G. Taylor, under penalty of perjury in the state of California, make the

21  following statements based upon my personal knowledge and know the statements to be

22  true and correct:

23      1.   I certify that I have attempted to "met and conferred" with Defendant's legal

24  counsel about the discovery issues set forth in Plaintiff's motion for a protective order.  The

25  scope and relevancy of Defendant's discovery requests have been the issue of

26  correspondence between counsel and on Friday, November 16, 2007 I placed a telephone

27  call to Mr. Wilson for the purpose of satisfying the "meet and confer" condition to bringing

28  the subject motion.  After leaving a voice message at Mr. Wilson's office, I wrote an email

29  to Mr. Wilson explaining that I left a voice message and the purpose of my telephone call,

30  and requested a telephone call from Mr. Wilson regarding the same.  Attached hereto as

DECLARATION OF BRADLEY G. TAYLOR IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER - 1

PEEL BRIMLEY LLP
2014 East Madison Street, Suite 100
Seattle, Washington 98122
(206) 770-3339

1  Exhibit "A" is a true and correct copy of my November 16, 2007 email correspondence to

2  Mr. Wilson. I have not received a responsive telephone call from Mr. Wilson and again

3  attempted to contact Mr. Wilson this afternoon (November 29, 2007). Because Plaintiff's

4  answers to Defendant's written discovery are due on or before November 28, 2007 and

5  because of the Thanksgiving holiday, Plaintiff has little choice other than to file its motion

6  for a protective order after its good faith efforts to "meet and confer" with Defendant's

7  legal counsel.

8    2.    Attached hereto as Exhibit "B" is a true and correct copy of Defendant's

9  Request for Admissions, page 2, which sets forth Request for Admission No. 2.[1]

10    3.    Attached hereto as Exhibit "C" is a true and correct copy of Defendant's

11  Interrogatories, page 3, which sets forth Interrogatories No. 13 through No. 20.

12    4.    Attached hereto as Exhibit "D" is a true and correct copy of Defendant's

13  Second Document Request, pages 2 and 3, which set forth Document Requests No. 1

14  through No. 10.

15

16  DATED this 19th day of November 2007, at Seattle, Washington.

17

18

19  Bradley G. Taylor

20

21

22

23

24

25

26

27

28  [1]  To comply with the page limitation for discovery motions set forth in the

29  Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup, I have attached only pages from relevant documents that

30  specifically relate to Plaintiff's motion for a protective order.

DECLARATION OF BRADLEY G. TAYLOR IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER - 2

PEEL BRIMLEY LLP
2014 East Madison Street, Suite 100
Seattle, Washington 98122
(206) 770-3339

## Brad Taylor

| | |
|---|---|
| **From:** | Brad Taylor [btaylor@peelbrimley.com] |
| **Sent:** | Friday, November 16, 2007 2:26 PM |
| **To:** | Patrick C. Wilson (pwilson@sclscal.org) |
| **Subject:** | PDG v. SCJCD (Plover Library) |

Patrick,

I just left a voice message for your receptionist requesting that you return my telephone call this afternoon. The purpose of the telephone call is to satisfy the "meet and confer" requirement prior to bringing discovery motions before the court. My specific concerns involve all of your discovery requests relating to the PDGE Form 10-Q SEC filing date July 31, 2007. Our position is that nothing in the filing is relevant to District's claims or defenses, that the discovery requests are not propounded for the purpose of obtaining admissible evidence, and that the burden upon PDGE far exceeds any value of permitting such discovery.

Please call me this afternoon so that we can satisfy the "meet and confer" obligation.

Thank you.

*Bradley G. Taylor, Esq.*
**PEEL BRIMLEY, LLP**
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122
TELEPHONE: (206) 770-3339
FACSIMILE: (206) 770-3490
btaylor@peelbrimley.com

*Exhibit ____A____*

2.      Admit that Exhibit A attached hereto is a true and correct copy of the Form 10-Q filed by PDG Environmental, Inc. with the Securities and Exchange Commission.

3.      Admit that, prior to October 2, 2006, PDG received a copy of the demo sheet referenced in paragraph 16 of the Counterclaim.

4.      Admit that, prior to October 2, 2006, PDG received a copy of Addendum No. 2 referenced in paragraph 17 of the Counterclaim.

Dated:  October 25, 2007

SCHOOL AND COLLEGE LEGAL SERVICES
OF CALIFORNIA


By: _____
        Patrick C. Wilson
        Attorney for the Sonoma County Junior
        College District

Exhibit ___B___

-2-

REQUEST FOR ADMISSIONS
C 07-02987WHA

11.      Identify all documents that support your contention that a " 'skim coat' substrate material existed under the acoustical ceiling texture," as set forth on page 3:10-11 of your answer to the Counterclaim.

12.      Describe in detail how the acoustical texture on the Plover library ceiling was different from the "skim coat" described on page 4:20-21 of your amended complaint.

13.      Explain the relationship between the Project Development Group, Inc. and PDG Environmental, Inc.

14.      Identify all remote locations referred to in the first sentence of item four of the Form 10-Q attached to the accompanying Request for Admission.

15.      Describe in detail all fraudulent activities identified in the internal investigation referred to in the first paragraph of item 4 of the Form 10-Q attached to the accompanying Request for Admission.

16.      State whether all customer billings with regard to the Project were sent to the customer from the corporate office.

17.      Identify all actions taken by PDG Environmental, Inc. to remediate the control deficiencies identified in the third paragraph of item four of the Form 10-Q attached to the accompanying Request for Admission.

18.      State each instance where PDG has billed customers for work never performed since January 1, 2005.

19.      Has PDG ever been accused of submitting a false claim to a customer?

20.      If your answer to the above interrogatory is yes, state in detail each such instance.

///
///
///
///
///
///
///

Exhibit _____ C _____

-3-

INTERROGATORIES
C 07-02987WHA

**Definitions**

1.    "Project" means the Plover library asbestos abatement project.

2.    "PDG" means the Project Development Group, Inc. and PDG Environmental, Inc.

**DOCUMENTS TO BE PRODUCED**

1.    All documents referring to the "material weakness" described in the first paragraph of item 4 of Form 10-Q attached to the accompanying request for admissions.

2.    All reports by PDG's auditors regarding the "material weakness" described in the first paragraph of item 4 of Form 10-Q attached to the accompanying request for admissions.

3.    All documents that discuss instances of suspected fraudulent activities by PDG employees since January 1, 2005.

4.    All documents reflecting the internal investigation identified in the first paragraph of item 4 of Form 10-Q attached to the accompanying request for admissions.

5.    All documents that reflect any other investigation conducted on behalf of PDG with regard to suspected fraudulent actions by PDG employees.

6.    All documents reflecting PDG's actions to remediate the control deficiencies described in item 4 of Form 10-Q attached to the accompanying request for admissions.

7.    All documents which discuss why PDG employees engaged in the fraudulent activities referred to in item 4 of Form 10-Q attached to the accompanying request for admissions.

8.    All documents that were received by PDG's Las Vegas office since January 1, 2004 that describe policies and procedures for the bidding of public projects.

9.    All documents that were received by PDG's Las Vegas office since January 1, 2004 that describe whether that office was expected to generate a certain amount of revenue per year.

///

///

///

///

*Exhibit* ___D___

-2-

DOCUMENT REQUEST
C 07-02987WHA

1    10.    All documents identified in your answers to interrogatories.

2

3    Dated: October 25, 2007                    SCHOOL AND COLLEGE LEGAL SERVICES
                                                OF CALIFORNIA
4

5

6    By: _____
                                                Patrick C. Wilson
7                                               Attorney for the Sonoma County Junior
                                                College District
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

DOCUMENT REQUEST
C 07-02987WHA

1  BRADLEY G. TAYLOR, Esq. (Pro Hac Vice)
   WADE R. DANN, Esq. (Pro Hac Vice)
2  PEEL BRIMLEY, LLP
   2014 East Madison Street, Suite 100
3  Seattle, Washington 98122
   Phone: (206) 770-3339
4  Fax: (206) 770-3490
   Email: btaylor@peelbrimley.com
5
   DAVID ERICKSEN, Esq. (#153923)
6  SEVERSON & WERSON
   One Embarcadero Center, Suite 2600
7  San Francisco, California 94111
   Phone: (415) 398-3344
8  Fax: (415) 956-0439

9  *Attorneys for Plaintiff Project*
   *Development Group, Inc.*
10

11          **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
12

13  PROJECT DEVELOPMENT GROUP,
    INC., a Pennsylvania corporation,          CASE NO.: CV 07-02987 WHA
14
                          Plaintiff,           DECLARATION OF DAVID
15                                             BERESFORD IN SUPPORT OF
    vs.                                        MOTION FOR PROTECTIVE ORDER
16
    SONOMA COUNTY JUNIOR COLLEGE
17  DISTRICT, of the County of Sonoma, State
    of California,
18
                          Defendant.
19

20          I, David Beresford, under penalty of perjury in the state of California, make the

21  following statements based upon my personal knowledge and know the statements to be

22  true and correct:

23          1.      I am the Senior Vice President for PDG Environmental, Inc. (PDGE) and have

24  personal knowledge of the PDGE's operations and management, as well as the July 31,

25  2007 Form 10-Q SEC filing (hereinafter "the Filing") by PDGE.

26          2.      Attached hereto is a true and correct copy of page 15 of the Filing which

27  provides an explanation of the events involved with employee embezzlement and fraud

28  upon PDGE that appears to be the basis for numerous written discovery requests

29  propounded by the Sonoma County Junior College District in the above-captioned matter.

30

1    Because this Filing is a matter of public record, I refer to this statement of events. Out of

2    caution, and as a representative of a publicly-owned corporation, I can offer general facts

3    about the employee fraud. I am also concerned that making statements about this employee

4    fraud in the public court file may hinder the ongoing investigation by the local prosecutor's

5    office having jurisdiction over the criminal aspects of the events.

6        3.    Based upon its investigation with the assistance of local legal counsel, fraud

7    investigators, and forensic accountants, PDGE discovered that the local manager and

8    perhaps other individuals in the Seattle, Washington office was embezzling money from

9    PDGE in a scheme generally described as follows:

10            a.    Time records were completed for or by the Seattle managers family

11        members and friends who were paid by PDGE in the normal course;

12            b.    The manager, to justify the payment of wages, created invoices for

13        asbestos abatement projects that did not actually exist;

14            c.    These invoices were never sent to any client or left the corporate

15        organization;

16            d.    No client actually made payments to PDGE for work described by

17        these invoices;

18            e.    PDGE filed a claim against its employee theft insurance policy and

19        received $400,000.00 from the insurance company for the claim; and

20            f.    Currently, the local prosecutor's office is investigating the

21        embezzlement of funds from PDGE.

22        4.    The incident described in the Filing is confined to the acts of the manager of

23    the Seattle office.

24        5.    Because of the sensitivity of this matter to this publicly-owned corporation,

25    and because this isolated event has no relationship to Project Development Group, Inc.'s

26    claims for additional work required by the Sonoma County Junior College District, I ask

27    the court issue a protective order precluding the disclosure of information and documents

28    relating to the Filing.

29        6.    If the Court needs or requests additional information about this employee

30    embezzlement, I request to court to review the additional information "in camera" and seal

DECLARATION OF DAVID BERESFORD IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER - 2

PEEL BRIMLEY LLP
2014 East Madison Street, Suite 100
Seattle, Washington 98122
(206) 770-3339

1    the court record as it relates to the disclosure of information that is not already in the public

2    domain.

3         7.        Reviewing the Sonoma County Junior College District's extremely vague and

4    broad interrogatories and document requests, PDGE's compliance with these requests will

5    be extremely burdensome.  As stated in the Filing, we would need to obtain information

6    and documents from numerous sources not under PDGE's control.  At this time, I would

7    estimate that PDGE could expend a hundred man-hours in addition to the consultants' time

8    and associated costs to PDGE to completely answer the Sonoma County Junior College

9    District's interrogatories and gather documents.

10

11    DATED this _16th_ day of November 2007 at Pittsburgh, Pennsylvania.

12

13

14

15    David Beresford

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

Table of Contents

impairment, while the second phase (if necessary) measures impairment. The Corporation has elected to perform its annual analysis during the fourth quarter of each year based upon goodwill balances as of the end of the year. Although no indicators of impairment have been identified during fiscal 2007, there can be no assurance that future goodwill impairment tests will not result in a charge to earnings.

## NOTE 10 — EMPLOYEE FRAUD

For the three and six months ended July 31, 2006, the Company recorded a $251,000 and $598,000 non-recurring charge, respectively, relative to employee fraud at its Seattle office. This charge arises following an internal investigation commenced in October 2006 into operations at the Company's Seattle office, which indicated fraudulent activities undertaken by one or more former employees. The Company took immediate action including retaining legal counsel, fraud investigators, and forensic accountants to assist in determining the actual amount of the loss, appropriate legal action, and pursuit of insurance payments and other means of recovery for such losses. The Company was able to discover this incident through its internal control procedures, which alerted the Company to the issues, and the Company is confident that the fraudulent activities, while serious, were isolated.

As a result of the investigation, previously filed Quarterly Reports on Form 10-Q for the quarters ended April 30, 2006 and July 31, 2006 were amended and restated to correct the error caused by the employee fraud, which increased the net loss by $488,000 for the six-months ended July 31, 2006. Additionally the previously filed Annual Report on Form 10-K for the year ended January 31, 2006 was restated and the previously reported net income was reduced by $388,000. The Forms 10-K/A and 10-Q/A were filed as amendments on January 18, 2007.

The Company has filed a claim against the Company's employee theft insurance policy. The insurance claim amount is $500,000. The Corporation received approximately $250,000 associated with this claim in July 2007 and recorded the benefit as a component of Other Income. Any additional amounts received in the future will be recorded similar to the July 2007 receipt.

The Company has evaluated the impact of the employee fraud on its internal control over financial reporting and undertaken corrective measures (see "Item 4 – Controls and Procedures" below).

## NOTE 11 — NEW ACCOUNTING PRONOUNCEMENTS

In July 2006, the FASB issued Interpretation No. 48, *Accounting for Uncertainty in Income Taxes – an interpretation of FASB Statement No. 109* ("FIN No. 48"), which prescribes measurement attributes and a recognition threshold, as well as criteria for subsequently recognizing, derecognizing and measuring uncertain tax positions for financial reporting purposes. FIN No. 48 also requires additional disclosure concerning uncertainty related to deferred income tax assets and liabilities. Any adjustments resulting from implementation of FIN No. 48 are required to be recognized as changes in accounting principles with a cumulative effect adjustment to retained earnings as of the beginning of the year of adoption. Implementation of FIN No. 48 is required for the first annual period beginning after December 15, 2006. The Company adopted FIN No. 48 beginning February 1, 2007. The Company reviewed its previously recognized tax benefits and determined that no material uncertainty was indicated as of the implementation of the new standard.

In September 2006, FASB issued Statement of Financial Accounting Standards No. 157 ("SFAS No. 157"), "Fair Value Measurements." SFAS No. 157 defines fair value, establishes a framework for measuring fair value and requires enhanced disclosures about fair value measurements. SFAS No. 157 requires companies to disclose the fair value of its financial instruments according to a fair value hierarchy. Additionally, companies are required to provide certain disclosures regarding instruments within the hierarchy, including a reconciliation of the beginning and ending balances for each major category of assets and liabilities. SFAS 157 is effective for the Company's fiscal year beginning February 1, 2008. The adoption of SFAS No. 157 is not expected to have a material effect on the Company's results of operations, cash flows, or financial condition.

In September 2006, the FASB issued SFAS No. 158, "Employers' Accounting for Defined Benefit Pension and Other Post Retirement Plans- an amendment of FASB Statements No. 87, 88, 106 and 132(R)" ("SFAS No. 158"). SFAS No. 158 requires an employer that sponsors one or more single-employer defined benefit plans to

15