BRADLEY G. TAYLOR, Esq. (Pro Hac Vice)
WADE R. DANN, Esq. (Pro Hac Vice)
PEEL BRIMLEY, LLP
2014 East Madison Street, Suite 100
Seattle, Washington 98122
Phone: (206) 770-3339
Fax: (206) 770-3490
Email: btaylor@peelbrimley.com

DAVID ERICKSEN, Esq. (#153923)
SEVERSON & WERSON
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Phone: (415) 398-3344
Fax: (415) 956-0439

*Attorneys for Plaintiff Project
Development Group, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROJECT DEVELOPMENT GROUP, INC., a Pennsylvania corporation,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>SONOMA COUNTY JUNIOR COLLEGE DISTRICT, of the County of Sonoma, State of California,<br><br>　　　　　　　Defendant. | CASE NO.: CV 07-02987 WHA<br><br>MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S SECOND COUNTERCLAIM<br><br>Noticed Hearing Date: January 10, 2008<br>Hearing Time: 8:00 a.m. |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Project Development Group, Inc. ("PDG"), by counsel, respectfully move the Court for summary judgment on Defendant's Second Counterclaim in the Answer to Amended Complaint for Damages by the Sonoma County Junior College District and Counterclaim. This motion is based on the pleadings, the memorandum of points and authorities that follows, the

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 1

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

1  Declaration of Bradley G. Taylor and the documentary evidence that accompany this motion,
2  and such other matters as may be considered by the Court..
3       DATED this 5th day of December, 2007.

                              PEEL BRIMLEY LLP

                              _____
                              BRADLEY G. TAYLOR, ESQ., Pro Hac Vice
                              2014 East Madison Street, Suite 100
                              Seattle, Washington 98122
                              Phone: (206) 770-3339
                              Attorneys for Plaintiff Project Development
                              Group, Inc.

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 2

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 4

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DISTRICT'S SECOND COUNTERCLAIM ................................................................................................................ 5

    A.    INTRODUCTION ............................................................................................... 5

    B.    RELIEF REQUESTED ........................................................................................ 6

    C.    BACKGROUND & MATERIAL FACTS ........................................................ 6

    D.    ARGUMENT ........................................................................................................ 9

        1.    Summary Judgment Standard .................................................................. 9

        2.    The District's Second Counterclaim Must Be Dismissed Because California Law Does Not Allow Two Remedies For The Same Delay .................................................. 10

            a.    Liquidated damages are the exclusive contractual remedy for "delay." ............... 10

            b.    The District alone drafted the Abatement Project contract with complete information to evaluate the delay risk and potential damages. ................................ 11

            c.    The District could have, but did not make the indemnity provision specific for actual delay damage ........................................................................ 12

            d.    The District cannot ignore the specific contract remedy and recover on two remedies for one delay. ........................................................................ 14

    E.    CONCLUSION ................................................................................................. 16

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 3

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

# TABLE OF AUTHORITIES

**Cases**

*American Dynasty*, 101 Cal.App.4th at 1049, 124 Cal.Rptr.2d 818. .......................................... 12

*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 .................................................................................................................... 14

*Better Food Markets v. American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10 (Cal. 1953) ....... 10

*Calpine Corp. v. Ace American Ins. Co.*, 2007 WL 3010570 at *2 (N.D.Cal. 2007). ............... 10

*E.L. White, Inc. v. City of Huntington Beach*, 21 Cal.3d 497, 507, 146 Cal.Rptr. 614, 579 P.2d 505 (1978) ................................................................................................................. 13

*Fisher v. Schmeling*, 520 N.W.2d 820, 824 (N.D. 1994) .......................................................... 15

*Morey v. Vannucci*, 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998) ............................... 14

*Ray Farmers Union Elevator Co. v. Weyrauch*, 238 N.W.2d 47, 49 (N.D. 1975) .................... 15

*St. Paul Fire and Marine Ins. Co., v. American Dynasty*, 101 Cal.App.4th 1038, 1048, 124 Cal.Rptr.2d 818 (2002) ............................................................................................... 12

*Swinerton Builders v. Pacific Design Center 1*, 2005 WL 1519101 (Cal.App. 2 Dist. 2005) .. 14

*Vrgora v. Los Angeles Unified School District*, 152 Cal.App.3d 1178, 1185-1186, 200 Cal.Rptr. 130, 135 (2nd Dist. 1984) ................................................................................ 10

**Statutes**

California Government Code § 53069.85 ................................................................................... 10

Civ.Code, § 1636 ......................................................................................................................... 14

Civ.Code, § 1638 ......................................................................................................................... 14

**Rules**

Fed.R.Civ.P. 56(a) ......................................................................................................................... 9

Fed.R.Civ.P. 56(c) ......................................................................................................................... 9

**Treatises**

Scott Tyler, Note, *No (Easy) Way Out: "Liquidating" Stipulated Damages for Contractor Delay in Public Construction Contracts*, 44 Duke L.J. 357 (1994) ...................................... 10

Unruh and Worden, *Liquidated Damages for Delay in Completion of Commercial Construction Projects: Are They Recoverable By the Owner When the Owner Contributes to the Delay?*, 34 Santa Clara L Rev. 1 (1993) ............................................................................ 10

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 4

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DISTRICT'S SECOND COUNTERCLAIM**

### A.    INTRODUCTION

In its Answer/Counterclaim, the Sonoma County Junior College School District (the "District") alleges one occurrence of "unexcused delay" in PDG's completion of the asbestos abatement contract (a total of 61 calendar days). The District's contract with PDG provides one exclusive remedy for delay – i.e., a stipulated "liquidated" sum of $400 per day. However, the District alleges two different damages for <u>the same delay</u>: liquidated damages (First Counterclaim), and actual damages (Second Counterclaim). More specifically, the District's Second Counterclaim inconsistently alleges that PDG is liable for damage incurred by the District resulting from a "delay claim" submitted by Alten Construction ("Alten") – which the District alleges relates to <u>the same "delay"</u> for which the District seeks to assess liquidated damages.

Accordingly, this Motion argues that California law does not allow the District two remedies for the same delay. In summary, this Motion demonstrates as follows:

- The purpose of "liquidated damages" is to compensate the District for delay to the exclusion of "actual" damages – which, by agreement, are "impractical and extremely difficult" to ascertain;

- In contracting with PDG, the District solely evaluated the delay risk and potential damages, knowing a delay in the asbestos abatement work could delay Alten's start;

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 5

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

- The District could have, but did not, draft the indemnity provision in PDG's contract to provide a specific remedy for actual delay damages that third parties may allege;

- The District now wants the Court to ignore the specific contract remedy for delay – a remedy the District wrote into its contract – and allow the District two remedies against PDG for the same delay;

### B.   RELIEF REQUESTED

For the reasons set forth more fully below, PDG respectfully requests that this Court enter summary judgment dismissing the District's Second Counterclaim and hold, as a matter of law, the District's remedy for any alleged "unexcused delay" on the part of PDG is available exclusively pursuant to the liquidated damages provisions contained in the Contract Documents.

### C.   BACKGROUND & MATERIAL FACTS

This lawsuit arises out of a public construction project commonly referred to as the SRJC Plover Library Conversion Project (the "Conversion Project"). The Conversion Project generally involved selective demolition of the Plover Library (located on the Santa Rosa Junior College campus) and converting the building to a student services center. After the District advertised for bids to complete the Conversion Project, it discovered the existence of asbestos within the scope of selective demolition involved in the Conversion Project. The District decided to obtain bids and contract directly for the asbestos abatement rather than leave the asbestos abatement within the scope of work to be completed under the Conversion Project contract. Thus, the District prepared the Plover Asbestos Abatement Project

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 6

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

("Abatement Project") contract documents knowing that the Conversion Project contractor could not perform its interior work until the Abatement Project was completed.

In summary, the undisputed material facts relevant to this motion are as follows:

- On July 13, 2006, the District advertised for bids to construct the Conversion Project.[1]

- On August 16, 2006, <u>five weeks after</u> the District requested bids for the Conversion Project, Ralph Curran Company submitted an asbestos report (based upon Mr. Curran's site inspection on August 8, 2006) informing the District of the presence of asbestos in the existing building.[2]

- On August 23, 2006, <u>six weeks after</u> the District requested bids for the Conversion Project, the District advertised for bids for the Abatement Project and published its contract documents.[3]

- On August 29, 2006, the District received bids from prospective contractors for construction of the Conversion Project.[4]

- On September 11, 2006, <u>two weeks after</u> the District received bids for the Conversion Project, the District received bids for the Abatement Project.[5]

- On February 1, 2007, and after PDG completed its original contract scope of work and additional work (as alleged in its Amended Complaint), the District sent its Notice of

---

[1] See **Exhibit A** to the Declaration of Bradley G. Taylor ("Taylor Declaration")(copy of the District's Notice Inviting Bids for the Conversion Project).

[2] See Taylor Declaration, at **Exhibit B** (copy of Curran's August 16, 2006 Curran report to the District).

[3] See Taylor Declaration, at **Exhibit C,** page SCJCO456 (copy of the District's Notice Inviting Bids for the Asbestos Abatement Project).

[4] See Taylor Declaration, at **Exhibit D** ( copy of the Bid Opening Results for the Conversion Project).

[5] See Taylor Declaration, at **Exhibit E** (copy of the Bid Results for the Asbestos Abatement Project).

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 7

Claim and transmitted Alten's Change Order Request No. 1 to PDG.[6] The District's letter states that the Alten Change Order Request relates to the <u>same delay</u> for which the District is assessing liquidated damages: "The attached claim is a change order request . . . based solely on the delay to the commencement of Alten's work . . . caused by PDG's delay in completing the Plover Asbestos Abatement Project."

- Alten's Change Order Request No. 1 states that it is requesting time and damages as a result of <u>the same delay</u> caused by the District's failure to complete the asbestos abatement as promised: "The Notice to Proceed for this Project is November 1, 2006. ***Due to the delay caused by the Owner's asbestos abatement activity***, the actual start date was changed to January 18th, 2007, when the Owner notified Alten that Abatement Clearance was obtained." [Emphasis added.][7]

**RELEVANT CONTRACT PROVISIONS**

The following provision of PDG's Contract for the Abatement Project is material to this motion [emphasis added]:[8]

> 4. <u>Time for Completion</u>
>
> The starting date of the Contract shall be the first day listed by the District in the Notice to Proceed and the Contractor shall fully complete all the work before the expiration of <u>30</u> calendar days from said starting date.
>
> Time is of the essence in the performance of this Contract.
>
> ***Liquidated damages for Contractor's failure to complete the Contract within the time fixed for completion are established in the amount of <u>$400.00</u> per calendar day.***

---

[6] See Taylor Declaration, at **Exhibit F** (copy of the District's 2/1/07 letter and the enclosed Alten Request for Change Order No. 1, without the supporting documents submitted by Alten).

[7] Id.

[8] See Taylor Declaration, at **Exhibit G**. The District's contract documents are divided into several distinct parts, including the contract, the General Conditions, and the Technical Specifications (collectively, "Contract Documents"). The contract provisions relevant to this Motion are located in the Contract and the General Conditions.

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 8

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

The following provisions, in pertinent part, of the General Conditions to PDG's Contract Documents are material to this motion [emphasis added]:

22. LIQUIDATED DAMAGES

*Should the Contractor fail to complete this Contract within the time fixed for completion, together with extensions granted by the District for unavoidable delays, Contractor shall become liable to the District in the amount specified in the Contract per calendar day for each day said Contractor remains uncompleted beyond the time for completion, as and for liquidated damages and not as a penalty.* Contractor shall not be charged with liquidated damages when the delay in completion of the work beyond this time for completion is due to acts of the District. *It is expressly stipulated and agreed by Contractor and District that it would be impractical and extremely difficult to fix the actual amount of damages.*

. . .

29. HOLD HARMLESS

Contractor shall indemnify, defend with counsel acceptable to District, and hold harmless to the full extent permitted by law, District and its Board of Trustees, officers, agents, employees and volunteers from and against any and all liability, loss, damage, claims, expenses and costs (including, without limitation, attorney fees and costs and fees of litigation) (collectively, "Liability") of every nature arising out of or in connection with Contractor's performance of the project or its failure to comply with any of it obligations contained in these contract documents, except such Liability caused by the active negligence, sole negligence or willful misconduct of the District. Such indemnification shall extend to all claims, demands, or liabilities occurring after completion of the project as well as during the progress of the work. Pursuant to California Public Contract Code Section 9201, District shall timely notify Contractor of receipt of any third-party claim relating to this project.

D.   ARGUMENT

1. **Summary Judgment Standard**

A court may grant summary judgment as to all or a part of a party's claims. Fed.R.Civ.P. 56(a). Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The interpretation of a contract is a question

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 9

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

of law appropriate for summary judgment. *See Calpine Corp. v. Ace American Ins. Co.*, 2007 WL 3010570 at *2 (N.D.Cal. 2007).

**2.   The District's Second Counterclaim Must Be Dismissed Because California Law Does Not Allow Two Remedies For The Same Delay**

**a.   Liquidated damages are the exclusive contractual remedy for "delay."**

It is generally recognized that "parties are allowed to contract for liquidated damages if it is necessary to do so in order that they may know with reasonable certainty the extent of liability for a breach of the agreement." *Better Food Markets v. American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10 (Cal. 1953). A central purpose of "liquidated damages" is to "provide a remedy where damages are not easily ascertainable." *Vrgora v. Los Angeles Unified School District*, 152 Cal.App.3d 1178, 1185-1186, 200 Cal.Rptr. 130, 135 (2nd Dist. 1984).

Moreover, it is common in the construction industry – especially in *public* construction contracts – for the contracting parties to address the uncertainties involved in determining "delay" liability by agreeing to "liquidate" stipulated damages for delay. "In the context of a public construction contract, it has often been determined as a matter of law that contractor-induced damages ... are incalculable." *Id.* at 1186, 200 Cal.Rptr. at 134.[9] Indeed, liquidated damages for contractor "delay" on "public projects" is expressly authorized by California statute.[10] California Government Code § 53069.85 provides:

> The legislative body of a city, county, or district may include or cause to be included in contracts for public projects a provision establishing the time within which the whole or any specified portion of the work contemplated shall be completed. The legislative body may provide that for each day completion is

---

[9] *See generally* Unruh and Worden, *Liquidated Damages for Delay in Completion of Commercial Construction Projects: Are They Recoverable By the Owner When the Owner Contributes to the Delay?*, 34 Santa Clara L Rev. 1 (1993).

[10] *See also*, Scott Tyler, Note, *No (Easy) Way Out: "Liquidating" Stipulated Damages for Contractor Delay in Public Construction Contracts*, 44 Duke L.J. 357 (1994) (see pages 394-397 discussing California statutes dealing with liquidated damages in public construction contracts).

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 10

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

delayed beyond the specified time, the contractor shall forfeit and pay to the agency involved a specified sum of money, which may be deducted from any payments due or to become due to the contractor. The sum so specified is valid as liquidated damages unless manifestly unreasonable under the circumstances existing at the time the contract was made.

### b. The District alone drafted the Abatement Project contract with complete information to evaluate the delay risk and potential damages.

Given common industry practice and California's statutory sanction, it is not surprising that the District included a specific contractual remedy in the event PDG failed to complete its work within the contracted time: a stipulation for liquidated delay damages. The District's contract General Conditions provide that liquidated damages are the sole remedy in the event of delay, to the exclusion of actual damages: "[i]t is expressly stipulated and agreed by Contractor and District that it would be impractical and extremely difficult to fix the actual amount of damages." [11] The stipulated liquidated sum was established by the District based upon all known conditions and its assessment of all damages it would or could foreseeably incur if PDG's completion was delayed.

Moreover, as the following undisputed facts show, a "delay claim" from Alten was a foreseeable result of a "delay" in completing the Abatement Project, when the District knew that the Conversion Project contractor could not begin interior work until the asbestos abatement was completed:

- The District advertised for public bids on the Conversion Project on July 13, 2006.[12]
- About <u>five week later</u>, on August 16th, the District received an asbestos report, which showed the presence of asbestos in the building.[13]

---

[11] See Taylor Declaration at Exhibit G, General Conditions ¶ 22, "Liquidated Damages."
[12] See Exhibit A to the Declaration of Bradley G. Taylor
[13] Id., at Exhibit B

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 11

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

- Between August 16th and August 23rd, the District prepared its Contract Documents for the Abatement Project.

- Not until August 23rd, <u>six weeks after</u> requesting bids for the Conversion Project, did the District advertise for public bids on the Abatement Project.[14]

- The District opened the bids from prospective contractors on the Conversion Project (including Alten's bid for general contractor services) on August 29th.[15]

- Not until September 11th, <u>two weeks after</u> the District opened the Conversion Project bids, did the District receive and open bids on the Abatement Project.[16]

    c.    **The District could have, but did not make the indemnity provision specific for actual delay damage**

Construction contracts and subcontracts commonly contain risk-shifting provisions that require the contractor/subcontractor to defend and indemnify the owner/contractor for claims for personal injury or property damage arising from the contract/subcontract work. Indemnity agreements are construed under the same rules that govern the interpretation of other contracts. *See St. Paul Fire and Marine Ins. Co., v. American Dynasty*, 101 Cal.App.4th 1038, 1048, 124 Cal.Rptr.2d 818 (2002). Thus, an indemnity agreement must be interpreted to give effect to the mutual intentions of the parties as it existed at the time of the contracting (Civ.Code § 1636), and the parties' intent as to the scope of indemnity must be ascertained examining the clear and explicit language of the contract. *Id.* §§ 1638-1639; *see also American Dynasty*, 101 Cal.App.4th at 1049, 124 Cal.Rptr.2d 818.

---

[14] Id., at Exhibit C, page SCJCO456
[15] Id., at Exhibit D
[16] Id., at Exhibit E

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 12

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

In contrast to the specific liquidated damages stipulation in PDG's Contract, the "Hold Harmless" provision contained the District's Contract General Conditions is one of general indemnity. As such, it is couched in typical contract terms relating to degrees of negligence or tort-based liability (i.e., the Contractor's indemnity obligation does not extend to liability "caused by the active negligence, sole negligence or willful misconduct of the District"). The General Conditions, ¶29 provides, in pertinent part:[17]

> 29. <u>HOLD HARMLESS</u>
>
> Contractor shall indemnify, defend with counsel acceptable to District, and hold harmless to the full extent permitted by law, District . . . from and against any and all liability, loss, damage, claims, expenses and costs (including, without limitation, attorney fees and costs and fees of litigation) (collectively, "Liability") of every nature arising out of or in connection with Contractor's performance of the project or its failure to comply with any of it obligations contained in these contract documents, except such Liability caused by the active negligence, sole negligence or willful misconduct of the District. Such indemnification shall extend to all claims, demands, or liabilities occurring after completion of the project as well as during the progress of the work. . . .

The parties to an indemnity contract enjoy "great freedom of action" in allocating risk, subject to certain limitations of public policy. *See E.L. White, Inc. v. City of Huntington Beach*, 21 Cal.3d 497, 507, 146 Cal.Rptr. 614, 579 P.2d 505 (1978). Yet, the District – the sole drafter of the Contract and Contract Documents – chose not to expressly expand the scope of the indemnity/defend provision to cover economic damages resulting from the same "delay" explicitly covered by the liquidated damages provisions elsewhere in the Contract Documents.

As discussed above, the District was fully aware of the circumstances that created an interplay between PDG's performance on the Abatement Project and the Conversion Project's schedule. Likewise, the District was certainly in the best position to contractually protect itself from any and all damages arising out of a "delay" in the performance of PDG's contract and

---

[17] See Taylor Declaration at Exhibit G, General Conditions ¶29, "Hold Harmless."

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 13

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

completion of the Abatement Project. The Contract Documents, prepared and published in their entirety by the District, reflect its evaluation and conclusion that its exclusive remedy for delay is liquidated damages.

### d. The District cannot ignore the specific contract remedy and recover on two remedies for one delay.

When the contract provides a specific remedy for a specific occurrence or breach, and when all the contract provisions are read to compliment one another, the Court cannot re-write the agreement (as urged by the District) to allow both the exclusive, bargained-for remedy of liquidated damages and actual damages for the same delay. "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ.Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ.Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (*Id.*, § 1649; see *AIU [ Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807,] 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)" ( *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.) "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. (Civ.Code, §§ 1635-1656; Code Civ. Proc., 1859-1861, 1864; [citations].)" *Morey v. Vannucci,* 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998); see also Swinerton Builders v. Pacific Design Center 1, 2005 WL 1519101 (Cal.App. 2 Dist. 2005).

Project Development Group, Inc.'s Motion for Summary
Judgment On Defendant's Second Counterclaim – 14

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

By contracting for "liquidated" damages, the District and PDG stipulated to the entire amount of damages recoverable by the District in the event of "unexcused delay" by PDG. Regardless of the amount of "actual" damages incurred, the parties are bound by their stipulation. *See Fisher v. Schmeling*, 520 N.W.2d 820, 824 (N.D. 1994)(actual damages and liquidated damages "are not alternative remedies … but are alternative forms of the same remedy – damages," quoting *Ray Farmers Union Elevator Co. v. Weyrauch*, 238 N.W.2d 47, 49 (N.D. 1975)). In *Ray Farmers Union Elevato*, the North Dakota Supreme Court stated:

> This court held recently: 'When parties make a valid stipulation of damages, they are bound by it, regardless of the amount of actual damages incurred.' *Bottineau Public Sch. Dist. No. 1 v. Zimmer*, 231 N.W.2d 178, 180 (N.D.1975). Even if we were to agree with the elevator company that a liquidated damages clause is a separate Remedy from other methods of computing damages (as this court may have treated it in *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494 (N.D.1974)), *we would necessarily reach the same conclusion, that a liquidated damage clause, without evidence to the contrary, is so inconsistent with any other Damage remedy as to require a conclusion that it contemplates exclusiveness*. In this case there is no evidence on the matter other than the contract itself. [Emphasis added].

Thus, reading the Contract Documents as a whole, and based on the totality of the circumstances existing when the District wrote its Contract Documents, the only reasonable interpretation of the liquidated damages provisions in the Contract Documents is that they provide the District's <u>exclusive</u> remedy in the event of any "unexcused delay" by PDG. It follows, therefore, that the terms of the Contract do not allow the District to also recover actual delay damages it may suffer. To allow the District to do so would, in effect, alter the contract to the extent of rendering the "Liquidated Damages" clause meaningless.

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 15

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339

### E. CONCLUSION

Accordingly, for the reasons set forth above, PDG respectfully requests that the Court grant summary judgment in their favor and dismiss with prejudice the District's Second Counterclaim.

DATED this 5th day of December, 2007.

PEEL BRIMLEY LLP

*/s/ Bradley G. Taylor*
BRADLEY G. TAYLOR, ESQ., Pro Hac Vice
2014 East Madison Street, Suite 100
Seattle, Washington 98122
Phone: (206) 770-3339
Attorneys for Plaintiff Project Development Group, Inc.

Project Development Group, Inc.'s Motion for Summary Judgment On Defendant's Second Counterclaim – 16

PEEL BRIMLEY LLP
ATTORNEYS AT LAW
2014 EAST MADISON STREET, SUITE 100
SEATTLE, WASHINGTON 98122-2965
(206) 770-3339